390 So.2d 341 (1980)
Phillip R. GRANT, Petitioner,
v.
STATE of Florida, Respondent.
No. 52886.
Supreme Court of Florida.
November 13, 1980.
*342 Richard L. Jorandby, Public Defender, and Jerry L. Schwarz and James K. Green, Asst. Public Defenders, West Palm Beach, for petitioner.
Jim Smith, Atty. Gen., and Glenn H. Mitchell, Asst. Atty. Gen., West Palm Beach, for respondent.
SUNDBERG, Chief Justice.
This is a petition for writ of certiorari to review a per curiam decision of the District Court of Appeal, Fourth District, reported at 352 So.2d 184. Conflict has been demonstrated with Gordon v. State, 145 So.2d 896 (Fla. 2d DCA 1962), which holds that an information charging a violation of section 805.01, Florida Statutes (1973), must specifically allege an intent to secretly confine. We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution (1972).
On April 18, 1975, petitioner was charged by information with false imprisonment, sexual battery and robbery. The case proceeded to trial on October 7, 1975, where petitioner was found guilty of all charges. He was sentenced to consecutive terms of imprisonment for the three offenses, totaling ninety-six years, two hundred ninety-five days.
At 1:00 a.m. on April 2, 1975, Nancy Dawn Campbell approached her car to go home after a long day's work. After Nancy placed the keys in the ignition, the car door flew open and a young man stormed into the driver's seat. A struggle ensued during which Ms. Campbell was hit in the face and threatened with death. The assailant finally forced Nancy into the back seat and ordered her to put a pillowcase over her head. He then drove off, holding the victim down by her wrists.
Their journey ended in a secluded orange grove, where Ms. Campbell was raped and robbed. During the sexual assault, Nancy removed the pillowcase in order to resist, thus enabling her to get a close and sustained look at her attacker. Later, Ms. Campbell was raped again by a man whom the original assailant picked up after leaving the orange grove. Both assailants fled on foot shortly thereafter.
Five or six days later, Ms. Campbell went to the Orange County Sheriff's Department and viewed a photographic lineup consisting of five pictures of possible suspects. She was unable to make a positive identification, but she did pick out two pictures which looked familiar. One of those two pictures was that of petitioner. On April 9, 1975, Ms. Campbell went to the Orange County jail to view a physical lineup. Shortly before the lineup, she encountered *343 another rape victim with a photo array who was awaiting her turn to view a physical lineup. Ms. Campbell looked at these photos but made no comment about them either to the other girl or to the police. Ms. Campbell testified that she thinks, but is not positive, that these were the same photographs she saw previously.
During the physical lineup Ms. Campbell positively identified petitioner as her first assailant. She also asked to have a closer look at the suspects so that she might be able to spot a tiny scar and "dot" which the rapist had on his right cheek. But because of the peculiar manner in which the lineup room was lighted, a closer examination failed to reveal the blemishes.
On the first day of trial a hearing was held outside the presence of the jury on petitioner's motion to suppress Ms. Campbell's out-of-court identification. Over defense counsel's strenuous objection, petitioner was brought before Ms. Campbell, at least in part for the purpose of giving Ms. Campbell the opportunity to locate the scar and dot which she had earlier failed to find. Ms. Campbell reaffirmed that petitioner was her attacker and stated that she now saw the scar, but not the dot. Later during the trial, Ms. Campbell once again identified petitioner and finally recognized the dot.
Petitioner challenges his convictions on four grounds, two of which merit only summary discussion. He first contests the seizure of tangible evidence pursuant to a search warrant allegedly based upon the unsworn statement of a police officer. The trial judge found to the contrary that the search warrant was grounded on a verified affidavit, and we believe the record supports his finding. Petitioner's second point, that the trial court erred in permitting the state to comment on petitioner's failure to testify, was waived by counsel's failure to move contemporaneously for a mistrial. Clark v. State, 363 So.2d 331 (Fla. 1978).
Of somewhat greater significance is petitioner's contention that evidence of Ms. Campbell's out-of-court identifications should have been suppressed. Petitioner argues that the lineup procedures employed were unnecessarily suggestive and that the identifications derived therefrom were unreliable. For the following reasons, we do not agree.
The primary evil to be avoided in the introduction of an out-of-court identification is a very substantial likelihood of misidentification. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." Neil v. Biggers, 409 U.S. at 198, 93 S.Ct. at 382. But as the analysis has evolved, a suggestive confrontation procedure, by itself, is not enough to require exclusion of the out-of-court identification; the confrontation evidence will be admissible if, despite its suggestive aspects, the out-of-court identification possesses certain features of reliability. Manson v. Brathwaite, 432 U.S. 98, 110, 97 S.Ct. 2243, 2250, 53 L.Ed.2d 140 (1977). Hence the appropriate test is twofold: (1) did the police employ an unnecessarily suggestive procedure in obtaining an out-of-court identification; (2) if so, considering all the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable misidentification. Id. The factors to be considered in evaluating the likelihood of misidentification include
the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
Neil v. Biggers, 409 U.S. at 199-200, 93 S.Ct. at 382.
*344 Recurring to the case before us, we need address only the first step in the above analysis, for we do not believe that the police employed unnecessarily suggestive procedures in obtaining Ms. Campbell's out-of-court identifications. First of all, the police were unaware that Ms. Campbell saw a photo array immediately before the physical lineup, and in any event there is no evidence to show that viewing the photos in any way jaundiced the reliability of her identification at the lineup. Nor is there evidence to show that the physical lineup itself was conducted in an improper or suggestive manner. Last, the showup during the hearing on the motion to suppress, while not a technique to be encouraged, was conducted for the legitimate purpose of giving Ms. Campbell the opportunity to spot the facial blemishes which she had been unable to locate previously.
Petitioner's final point on appeal is well taken. The trial judge erred in denying petitioner's motion to dismiss the information with respect to the charge of false imprisonment. A long and consistent line of Florida cases holds that an information charging false imprisonment must specifically allege an intent to secretly confine. State v. Register, 152 Fla. 239, 9 So.2d 804 (1942); Holroyd v. State, 127 Fla. 152, 172 So. 700 (1937); Ross v. State, 15 Fla. 55 (1875); Gordon v. State, 145 So.2d 896 (Fla. 2d DCA 1962). Therefore, petitioner's conviction of false imprisonment must be reversed.[1]
Accordingly, the decision of the District Court of Appeal, Fourth District, is approved insofar as it affirms petitioner's convictions of sexual battery and robbery. The decision is disapproved insofar as it affirms the conviction of false imprisonment. Our reversal of the false imprisonment conviction is without prejudice to seek a new information.[2] This cause is remanded to the District Court of Appeal, Fourth District, with directions to remand to the trial court for proceedings not inconsistent with this opinion.
It is so ordered.
ADKINS, BOYD, OVERTON and ENGLAND, JJ., concur.
NOTES
[1] Effective October 1, 1975, Florida's false imprisonment statute was substantially revised. § 787.02, Fla. Stat. (1975). The continuing utility of the above cases for crimes occurring after October 1, 1975, is thus very much in doubt. See Brunelle v. State, 360 So.2d 70 (Fla. 1978).
[2] Inasmuch as our reversal on the false imprisonment count is not based on insufficiency of the evidence, we perceive no double jeopardy problems in a retrial after the filing of a new information. See Burks v. United States, 437 U.S. 1, 14-15, 98 S.Ct. 2141, 2148-2149, 57 L.Ed.2d 1 (1978).