417 So.2d 826 (1982)
Larry Donall ADAMS, Appellant,
v.
STATE of Florida, Appellee.
No. AC-252.
District Court of Appeal of Florida, First District.
August 5, 1982.
Michael Allen, Public Defender, and P. Douglas Brinkmeyer, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Miguel A. Olivella, Jr., Asst. Atty. Gen., for appellee.
PER CURIAM.
Appellant appeals from a judgment and sentence for sexual battery. We affirm in part, reverse in part, and remand for further proceedings with directions.

I
The first issue for our consideration is whether the trial court erred in permitting eyewitness identification. The relevant facts are that appellant, Larry Adams, was charged with sexual battery of a person over the age of 11 by the use of physical force and violence likely to cause serious personal injury or the use or threat to use a *827 deadly weapon, a knife. The victim reported that a black man approached her about 10:00 at night and began beating her. The beating was so severe that her nose was fractured, her eyes were puffy, and at least two teeth were knocked loose. She fought vigorously against the attack until she passed out. After she regained consciousness, the assailant dragged her off into a dark wooded area near the street and raped her. The victim stated that her attacker was not anyone that she had known before and that she was able to see the attacker's face clearly in the street light when the attack began, although it was too dark to see his face during the rape. She described her attacker as approximately 5'9", 160 pounds, hair on his chin, and dressed in khaki pants and a blue shirt.
Appellant filed a motion to suppress the victim's eyewitness identification, both in-court and out-of-court, alleging that the witness had only a few minutes to glimpse the perpetrator and that her vision was impaired by the beating by the perpetrator. Furthermore, two days after the incident the witness was unable to identify the defendant's photograph from a group of eight photographs. On the following day, she identified the appellant in a line-up only after certain impermissibly suggestive incidents occurred. First of all, the defendant was the only participant in the line-up whose photograph had also been displayed to her one day earlier. Of the five individuals in the line-up, the victim knew the first three participants by name, and the defendant was the first participant the witness did not know. In addition, the defendant was displayed to the victim considerably longer than the first three participants and when he was displayed, the victim was instructed "to look at him closely." At the time the victim viewed the line-up, she had been informed that the police had picked up someone that they thought had committed the offense.
At the hearing on the motion to suppress prior to trial, the victim testified that she was unable to identify the perpetrator of the offense in the photographic line-up because her eyelids were so swollen that she could not see well. She did testify that on the following day she was informed that the police had picked up a suspect in her case before she viewed the line-up. The line-up was handled in such a way that each man was brought out one at a time for the victim to view; they were not all brought out at once. She recognized and personally knew the first three participants in the line-up and so indicated this to the police officer. She testified on direct that when the fourth person came out, the police officer told her to look at him very closely. On cross-examination, she testified that the officer told her that before each of the five people came out. She also testified that she picked out the fourth man as soon as she saw him and before she saw the fifth man. At trial, her testimony was that the police officer told her to look very closely at that person only when referring to number four, the defendant, and had not told her that regarding the other four participants in the line-up. In addition, she testified at trial that she identified the defendant only after she had seen all five of the participants in the line-up. The evidence also shows that the photographic line-up containing eight pictures showed seven of the subjects with shirts on and only one subject without a shirt and that subject was the defendant. The defendant was the only person whose picture was in the photographic line-up who also appeared in the corporeal line-up.
While we consider that the pre-trial identification procedure was unnecessarily suggestive, we do not consider that the evidence requires the reversal of the motion to suppress the pre-trial and in-court identifications. The test for admission of eyewitness identification when there has been an unnecessarily suggestive procedure is whether there was a very substantial likelihood of irreparable misidentification. In evaluating such a likelihood, the proper criteria are the opportunity of the victim to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of prior descriptions, the level of certainty of the witness at confrontation, and the length of time between the crime *828 and the confrontation. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and Grant v. State, 390 So.2d 341 (Fla. 1980).
The evidence here shows that the witness had a good opportunity to view the criminal at the time of the crime in that she was initially attacked right under a street light, and her testimony was that she got a good look at the perpetrator's face at that time, even though the actual sexual battery took place in a dark wooded area later. The beating took place over several minutes' period of time, and the witness testified that she was able to get a good look at the face. She gave a description at that time, which, while not particularly thorough, was not shown at the pretrial hearing or at trial to be inaccurate as the description of the defendant. Only three days elapsed between the date of the crime and the confrontation and there was some testimony that the witness' eyes were so puffy from the beating that she may not have been able to see prior to that third day. In fact, she testified that the reason she was unable to pick anyone out of the photographic lineup was that she was not able to see clearly.
Accordingly, although the circumstances of the photographic and pre-trial corporeal line-up, accompanied as they were with the victim's own contradictory testimony concerning the occurrences, are a cause of great concern, we cannot say that the trial court erred in allowing the identification testimony.

II
As a second issue, appellant challenges the denial of the motion for new trial. Although he concedes that there was sufficient evidence to support the conviction, he urges that under Tibbs v. State, 397 So.2d 1120 (Fla. 1981), aff'd., ___ U.S. ___, 102 S.Ct. 2211, 72 L.Ed.2d 652, the trial judge should have granted a new trial because the verdict was contrary to the weight of the evidence. We agree that Tibbs allows the grant of a new trial based on the weight of the evidence. We further agree that the evidence in this case was weak. There was no evidence pointing to appellant except the eyewitness identification. Appellant's wife's alibi testimony was unrefuted, and the physical evidence taken by the medical examiner was inconclusive. Furthermore, there was evidence that defendant was at the time of the arrest suffering from an advanced case of gonorrhea and that the disease was at such a stage that the doctor testified that it was extremely unlikely that a woman who had intercourse with him would not herself develop gonorrhea. It was not impossible, however, and the fact that the victim did not ever develop a case of gonorrhea is not dispositive. The Florida Supreme Court in its opinion in Tibbs v. State said:
Henceforth, no appellate court should reverse a conviction or judgment on the ground that the weight of the evidence is tenuous or insubstantial.
* * * * * *
Considerations of policy support, if not dictate, this result. Elimination of the third category of reversals accords Florida appellate courts their proper role in examining the sufficiency of the evidence, while leaving questions of weight for resolution only before the trier of fact.
Although the motion for new trial raised the weight of the evidence issue, the order denying the motion is worded in such a way as to indicate the trial court may have limited itself to the sufficiency of evidence standard. We further note that the ruling was entered prior to the Florida Supreme Court's Tibbs opinion. Accordingly, we reverse and remand this case with directions to the trial judge to state whether his ruling on the motion for new trial was a ruling on the weight of the evidence as well as on the sufficiency. If he asserts that it was not, then he is directed to reconsider the motion on that basis.

III
Finally, the appellant points out, and the state agrees, that the judgment and sentence misnames the offense of conviction as *829 sexual battery with "great force." If the conviction stands, the trial court is directed to amend the judgment and sentence to show the offense as sexual battery of a person over eleven (11) years of age by the use of physical force and violence likely to cause serious personal injury.
AFFIRMED in part, REVERSED in part, and REMANDED with directions.
ROBERT P. SMITH, Jr., C.J., and McCORD and MILLS, JJ., concur.