455 So.2d 1046 (1984)
The STATE of Florida, Appellant,
v.
Jesus Rafael GUERRA, Appellee.
Case No. 82-2328.
District Court of Appeal of Florida, Third District.
March 13, 1984.
On Motion for Rehearing September 4, 1984.
Jim Smith, Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., and Faith Mesnekoff, Legal Intern, for appellant.
Bennett H. Brummer, Public Defender, and Rory S. Stein, Asst. Public Defender, for appellant.
Before HENDRY, BASKIN and JORGENSON, JJ.
On Motion for Rehearing En Banc September 4, 1984.
HENDRY, Judge.
The State of Florida appeals from an order granting appellee/defendant's motion to suppress an out-of-court showup identification. For reasons more fully stated below, we affirm.
The victim was robbed at gunpoint at 10:30 p.m. while employed as a clerk at a Farm Store. She told police that two men, one a young white Latin male and the other an older black male, drove up in an old green station wagon, pointed a shotgun at her and demanded money. She put all of the money from the register in a bag and the two men drove away. As they did, the victim noticed that there was no license tag on the car. She could give no further description of the assailants to the police. She was obviously extremely upset and frightened.
The information was put out over the radio at about 10:40 p.m. Approximately one half hour later, while the investigating officers were still at the Farm Store, another officer called in to report that he had just stopped an old green station wagon with no license tag. This fit the BOLO description. The victim was told that a car with two occupants matching the description had been stopped. She went with the police to the place where the car and the occupants were being detained. She immediately identified the station wagon. The defendant, the only man present obviously not a police officer, was brought over so *1047 she could see him. She identified him as the assailant and he was arrested. During her deposition, the victim testified that while employed at the Farm Store, she had been robbed five times between February and August, 1982, she kept getting the details of the various robberies confused, and she stated that she was not certain that she could make an in-court identification of the defendant.
After a hearing on the motion to suppress, the trial court entered an order which contained extensive findings of fact and conclusions of law. The court concluded, inter alia, that the showup was an unnecessarily suggestive procedure, that the victim's level of certainty was a result of the suggestive procedure, that the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification, and that the State did not prove by clear and convincing evidence that the in-court identification would have a source independent of the illegal pretrial confrontation.
The United States Supreme Court first enunciated its concern with the problem of eyewitness identification in a collection of cases, all decided the same day, known as the "Wade trilogy." United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), found a post-indictment lineup to be a "critical stage of the prosecution" requiring the presence of counsel, and also found that an in-court identification must be based upon observations other than the suspect lineup identification. In Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the Court held that it was constitutional error to allow an in-court identification without first determining that it was not tainted by an illegal lineup but was of independent origin. In Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), a showup case, the Court found that a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances. These three cases reflect the concern that the jury not hear eyewitness testimony about prior out-of-court identifications unless that evidence has aspects of reliability. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). This theme continued in Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968) (convictions based on eyewitness identification at trial following a pretrial identification will be set aside only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969) (identification procedures found to be impermissibly suggestive); and Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).
Drawing on the general guidelines established in all of these cases, the Court revisited the issue of the admissibility of evidence of prior out-of-court identifications in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and held that if, under the totality of the circumstances, the identification itself was reliable even though the confrontation procedure was suggestive, then evidence of the prior identification would be admissible. The identification is reliable if, when tested against a list of five factors set out by the Court,[1] it is clear that the witness' courtroom identification rests on an independent recollection of the initial encounter with the assailant, uninfluenced by the pretrial identification. United States v. Crews, 445 U.S. 463, 473 n. 18, 100 S.Ct. 1244, 1251 n. 18, 63 L.Ed.2d 537, 547 n. 18 (1980) (n. 18, drawing together the cases from Wade to Manson). This two-step process, i.e., was the identification procedure suggestive, and, if so, was the identification still reliable (was it based upon an independent source of *1048 recollection) in spite of the suggestiveness, is now the well established procedure for determining admissibility of evidence of prior out-of-court identifications. Manson v. Brathwaite, supra, 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154 ("reliability is the linchpin in determining the admissibility of identification testimony... . The factors to be considered are set out in Biggers... . Against these factors is to be weighed the corrupting effect of the suggestive identification itself"). See also Grant v. State, 390 So.2d 341 (Fla. 1980); State v. Walker, 429 So.2d 1301 (Fla. 4th DCA 1983) (identification suppressed; confrontation impermissibly suggestive); State v. Mendez, 423 So.2d 621, 622 (Fla. 4th DCA 1982) (State must prove by clear and convincing evidence that the in-court identification was made independent of the improper photographic lineup); Lauramore v. State, 422 So.2d 896 (Fla. 1st DCA 1982), pet. for rev. denied, 426 So.2d 27 (Fla. 1983); State v. Cromartie, 419 So.2d 757 (Fla. 1st DCA), pet. for rev. dismissed, 422 So.2d 842 (Fla. 1982); Adams v. State, 417 So.2d 826 (Fla. 1st DCA 1982).
Here, the trial court carefully analysed the facts and events in this case against the several factors set out in Neil v. Biggers, supra, and reaffirmed in Manson v. Brathwaite, supra. There is ample evidence in the record to support the findings. Consequently, the trial court's resolution of the evidence will not be disturbed on appeal. State v. Garcia, 431 So.2d 651 (Fla. 3d DCA 1983); Sarno v. State, 424 So.2d 829 (Fla. 3d DCA), pet. for rev. denied, 434 So.2d 888 (Fla. 1983).
Affirmed.
JORGENSON, Judge, dissenting.
I respectfully dissent. Within one-half hour after the armed robbery had occurred, the victim made a positive identification of the vehicle, the firearm, and the driver-defendant. The field confrontation met the standard of reliability set by Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The witness's confusion, during a deposition, regarding subsequent armed robberies at the same location is simply not relevant to the issue of the reliability of her identification at the scene. Similarly, we do not know whether the victim in this case could make an in-court identification of Guerra. There is no suggestion in this record of an impermissibly suggestive photo lineup or other action on the part of the state which would imply anything other than proper police conduct.
Nor do I agree that the trial court was in a better position to evaluate the demeanor and testimony of the witnesses. The critical testimony on the motion to suppress considered by the trial court was based upon Ms. Luerio's deposition testimony. The investigating officer's testimony regarding Ms. Luerio's positive identification of the vehicle, the firearm (a 26-inch shotgun), and the defendant was uncontroverted.
An identification made shortly after a crime is inherently more reliable than a later identification in court. State v. Freber, 366 So.2d 426 (Fla. 1978). See also Grant v. State, 390 So.2d 341 (Fla. 1980) (confrontation evidence will be admissible if, despite its suggestive aspects, the out-of-court identification possesses certain features of reliability), cert. denied mem., 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981).
In my view the trial court erred in suppressing the identification of the defendant, the car, and the unusual firearm involved in this case.
I would reverse.

ON MOTION FOR REHEARING EN BANC GRANTED
Before SCHWARTZ, C.J., and HENDRY, BARKDULL, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.
PER CURIAM.
On motion for rehearing en banc granted, the court has granted rehearing *1049 en banc without oral argument or additional briefs and, upon consideration of the merits, adopts the dissenting panel opinion of Judge Jorgenson as the opinion and decision of this court.
Accordingly, the panel decision is vacated and the judgment below is reversed.
Reversed.
BASKIN, Judge (dissenting).
I disagree with the majority for two reasons. First, no lack of uniformity has been demonstrated to justify en banc rehearing. Florida Rule of Appellate Procedure 9.331 states that en banc rehearings "shall not be ordered unless necessary to maintain uniformity in the court's decisions." The trial court reviewed all the circumstances before deciding that the identification should be suppressed. The fact that upon review of different circumstances, a trial court reached a different conclusions in Glas v. State, 329 So.2d 341 (Fla.3d DCA 1976), cited by the state, does not create lack of uniformity under the rule.
Next, I disagree with the majority on the merits for the reasons expressed by Judge Hendry in the original panel opinion. The United States Supreme Court has enunciated guidelines for evaluating the reliability of identification procedures. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The trial court carefully followed those guidelines and noted the evidentiary support for its conclusion that the identification was tainted by unduly suggestive identification procedures. The trial court stated in its order:
1. The robbery happened in just a few seconds.
2. The victim was crying, visibly shaking, nervous and also angry.
3. The victim had been robbed five times at that same Farm Store between the period of February 1982 and August 1982.
4. The victim believed this incident to be the third robbery though she is not sure.
5. Ten to fifteen minutes elapsed from the time of the officers' arrival until the time the bolo was issued because the officers had to calm the victim before they could obtain the information necessary for the bolo.
6. The only description the victim could provide was that the offender was a young white Latin male driving an older green station wagon with no tag and that the passenger was a black male, possibly Latin or American.
7. The victim was unable to describe the clothing and could not point to any distinguishing physical characteristics.
8. The victim cannot remember anything about the offender's face and does not think she would be able to recognize the offender is she saw him again.
9. Approximately one half hour to one hour later, the Defendant's vehicle was stopped about three miles from the scene of the crime.
10. The police informed the victim that a car with two occupants had been stopped which matched her earlier description.
11. The victim was then driven to the location where the car was stopped and immediately identified the vehicle as the one involved.
12. The victim then sees two males surrounded by a number of uniformed police officers standing in the glare of the patrol car lights.
13. After seeing and identifying the car, the victim identified the only white Latin male standing next to the car from a distance of two car lengths away.
14. The victim was still nervous when she made the identification.
15. A police officer showed the victim the weapon that was found in the car and *1050 told her that that was the weapon that was used.
16. The victim was unable to identify the weapon.
17. The police also told the victim that money had been found in the car just as she had described it.
18. Approximately six months has passed from the original confrontation to the trial date.
Applying the facts to the applicable case law of Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and State v. Sepulvado, 362 So.2d 324 (2nd DCA 1978) and applying the factors enunciated in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Court makes the following conclusions of law:
1. The Court finds that the police did employ a clearly unnecessarily suggestive procedure in obtaining the out-of-court identification.
2. The Court finds the testimony of the officer to be credible on its face.
3. The Court concludes that the victim was angry and knew that the police had the suspects, and upon seeing the car, the victim would probably have identified any two people standing next to the vehicle.
4. The Court also concludes that the victim's level of certainty at the show-up was a result of the impermissibly suggestive procedure and not the result of an independent recollection.
5. Further, the Court finds that considering the totality of the circumstances, the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification.
6. The Court finds that the State did not prove by clear and convincing evidence that the in-court identification has a source independent of the illegal pretrial confrontation.
7. The deposition of the victim and the transcripts of October 13, 1982 and October 26, 1982 are incorporated by reference.
I discern no basis for disregarding the trial court's findings and conclusions.
I would affirm.
HENDRY and HUBBART, JJ., concur.
NOTES
[1] The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.