SHIVERS, Judge.
Appellant, defendant below, was charged by information with attempted first-degree murder with a firearm and robbery with a firearm. Both counts arose from a single episode occurring on September 29, 1983, in which the victim’s car was stolen after he was shot several times and left by the side of Interstate 10. Approximately three weeks later the appellant’s codefendant, *859 Edward Morales, was arrested in Texas while driving the stolen car. He was extradited to Jackson County, Florida, where he was interviewed by Officer Dennis of the Jackson County Sheriff’s Department. During that interview, on November 10, 1983, Morales confessed and implicated appellant as being the one who shot the victim. Morales’ implication led to appellant’s arrest in Texas on December 11, 1983. Morales was tried separately and did not testify at appellant’s trial.
After a jury trial on August 3, 1984, appellant was found guilty of attempted second-degree murder with a firearm and robbery with a firearm. The trial court departed from the recommended sentencing guidelines range of 17-22 years and sentenced appellant to 20 years on Count I and 40 years on Count II, to run concurrently, with probation for natural life. Defendant now appeals the judgment, raising two issues. We find one of these issues to be meritorious and reverse and remand for a new trial.
On September 29, 1983, the victim, Robert Rollings, was traveling east on I — 10 en route to Fort Lauderdale, Florida. He pulled into a rest area to rest his eyes and, after sleeping for approximately one hour, was awakened by two men knocking on his car window. Rollings exited the car and carried on a short conversation, from a distance of approximately 10 feet, with one of the men. The man told Rollings that his car had broken down on the highway, west of the rest area, and asked Rollings if he would drive them to the car and give them a “jump.” Rollings indicated that he would be willing to help the men. One man entered the front passenger seat and the other man, with whom Rollings had had the conversation, entered the back seat. After driving several miles west on I — 10 without seeing the car, Rollings stated that he could go no further and pulled off to the side of the highway. He then saw what he described as “flashes” from the back seat of the car and saw blood on his arm. The man in the back seat said, “Don’t you realize you are shot?” The man in the front seat pushed Rollings out of the car onto the highway, entered the car, and both men drove away leaving Rollings by the side of 1-10.
On the day following the crime, Rollings was interviewed at the hospital by Officer Dennis. Although Rollings was on medication at the time, he testified that he was able to answer all of Officr Dennis’ questions. During the interview Rollings described the perpetrators as two Hispanic males in their mid-late thirties. He stated that the man who rode in the front seat was approximately 6 feet tall, while the man in the back seat was shorter and stocky with medium length hair. When asked whether the shorter man had any facial hair, Rollings replied, “Not as I recall.” Further, when Officer Dennis asked Rollings whether he thought he could recognize the two men again if he saw them, Rollings stated that he could not be positive.
On November 18, 1983, approximately 2V2 months after the initial interview, Officer Dennis spoke with Rollings again. At that time, Dennis told Rollings that his car had been recovered and that Dennis had some suspects in mind. He then showed Rollings a photographic lineup and asked him whether he could identify any suspects. Rollings selected a photograph as being the man who shot him, but qualified the identification by stating that the face in the photograph was fuller.
During the jury trial, Rollings identified appellant as the man who had shot him, stating that appellant looked to be “maybe late twenties.” When asked on cross-examination why he was now positive that appellant was the man who shot him, Rollings replied, “Well, when I saw the pictures it came back to me.” Appellant now argues (1) that the photographic lineup was impermissibly suggestive, and (2) that any in-court identification based on the lineup must be set aside. We disagree.
In Grant v. State, 390 So.2d 341 (Fla.1980), cert. denied, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981), the Florida Supreme Court adopted the two-pronged *860 test of Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), for determining whether an out-of-court identification should be excluded:
(1) did the police employ an unnecessarily suggestive procedure in obtaining an out-of-court identification; (2) if so, considering all the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable misiden-tifieation.
390 So.2d at 343. The Grant court explained that a suggestive confrontation procedure, by itself, will not be enough to exclude the out-of-court identification. The procedure, even if found to be suggestive, will be admissible if it possesses certain “features of reliability.” The court identified those features of reliability as including
the opportunity of the witness to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of the witness’ prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
390 So.2d at 343, quoting Neil v. Biggers, 409 U.S. 188, at 199-200, 93 S.Ct. 375 at 382, 34 L.Ed.2d 401.
Applying the first prong of the above test, we find that no impermissibly suggestive procedure was used in obtaining the out-of-court identification. At the time of the lineup, Rollings was advised by Officer Dennis that his car had been recovered and that Dennis had some suspects. He was not, however, told that either or both of the suspects’ photos were in the lineup. Further, we do not find in this case any indication of the type of impermissibly suggestive lineup where the perpetrator’s photograph is the only photograph matching the description given by the witness. See, e.g., Judd v. State, 402 So.2d 1279 (Fla. 4th DCA 1981) (photographic lineup held to be impermissibly suggestive where, of seven photographs, only defendant’s photograph depicted a bare-chested man with braided hair, as described by the witness.)
Second, even assuming an unnecessarily suggestive procedure did exist, we believe the lineup possesses several of the features of reliability outlined in Grant v. State and Neil v. Biggers, supra. First, Rollings had an opportunity to view the criminal casually, from a distance of approximately ten feet, prior to the occurrence of the crime or of any behavior which might have induced fear. Second, the only substantial difference between the prior description given by Rollings and the photograph of appellant is that Rollings previously stated he “did not recall” the man who shot him as having any facial hair. Had appellant’s photo been the only photo in the lineup with no facial hair, that statement might be of more significance. It appears, however, that all of the men in the photo lineup have some type of mustache. Further, although Rollings had previously described the two men as being mid-to-late thirties, upon identifying appellant’s photograph he stated that the man looked a little younger but that he was certain of his identity. Third, Rollings was positive in his identification of both appellant and Morales. Fourth, an inordinate amount of time did not pass between the crime and the confrontation. As we find the photographic lineup not to be impermissibly suggestive, we need not address whether the in-court ID was “tainted” by the out-of-court identification.
Appellant’s second issue on appeal arises from the following testimony of Officer Dennis at trial:
Q: Did you put out any type of B.O.L.O. like you had earlier on Johnny Carras-co?
A: Yes, sir. During the course of my investigation I interviewed Morales again and at that time a confession was obtained and he implicated Carras-co.
*861 MR. SIMPSON: Your Honor.
THE COURT: Just a minute, you are going too far. Disregard that.
MR. SIMPSON: For the record I want to make a motion for a mistrial.
THE COURT: Okay. Don’t pay any attention to what somebody told him. You know better than that, John.
THE WITNESS: I’m sorry.
MR. SIMPSON: Did you get my motion for mistrial on the record? I want to move for a mistrial at this time.
THE COURT: Motion be denied.
Appellant alleges that Officer Dennis’ testimony as to Morales’ implication of appellant constituted a violation of the Bruton rule. We agree. In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held (1) that the use of evidence of a non-testifying codefendant’s confession and implication of the jointly-tried defendant violated the defendant’s Sixth Amendment right to confront the witness, and (2) that the violation was not cured by an instruction to the jury to disregard the statement. Although Morales was not tried jointly with appellant in the instant case, Morales was nonetheless unavailable to testify at defendant’s trial. Therefore, Officer Dennis’ testimony as to Morales’ implication of appellant clearly denied appellant his Sixth Amendment right to confront Morales. Further, we find that the properly-admitted evidence in this case was not so overwhelming as to require us to find that the violation of the Bruton rule constituted harmless error. See Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).
As we reverse and remand for a new trial, we need not address appellant’s argument with regard to the sentence imposed by the trial court.
REVERSED and REMANDED for a new trial.
ERVIN, C.J., and JOANOS, J., concur.