GERSTEN, Judge
(dissenting).
Because I believe the trial court correctly suppressed the evidence, I respectfully dissent. The trial court explained the constitutional basis for its ruling:
*1047 You know what the basis of the constitution [is] ... why this [Fourth] Amendment was so important historically? This amendment was so important for the framers of our constitution because [of] writs of [assistance]. That’s why we had a revolution because the King’s people had these writs of [assistance]. They could invade anybody’s property. And they said, ‘No we’re going to require warrants before you invade our homes.’ Who was the great jurist, the English jurist that said, ‘Though my home is full of cracks and my roof leaks, wind and water may invade my premises but the king cannot without a warrant.’[1]
Writs of assistance[2] were used to authorize unlimited searches of the homes of American colonists. As a reaction to these general writs, see Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1979), Standford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431, rehearing denied, 380 U.S. 926, 85 S.Ct. 879, 13 L.Ed.2d 813 (1964), the framers of the United States Constitution imbued the Fourth Amendment with language reflecting their concerns about the sanctity of a person’s home:
The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause ... and particularly describing the place to be searched and the persons ... to be seized.
Fourth Amendment, United States Constitution.
Article I, Section 12, of the Florida Constitution is the state law counterpart to the Fourth Amendment:
The right of the people to be secure in their persons, houses, property and effects against unreasonable searches and seizures ... shall not be violated. No warrant shall be issued except upon probable cause.... This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.
Statutes and rules authorizing searches and seizures must be strictly construed, and affidavits and warrants issued pursuant to such authority must meticulously conform to statutory and constitutional provisions. Bonilla v. State, 579 So.2d 802 (Fla. 5th DCA 1991); State v. Tolmie, 421 So.2d 1087 (Fla. 4th DCA 1982); see also Gildrie v. State, 94 Fla. 134, 113 So. 704 (1927); Leveson v. State, 138 So.2d 361 (Fla. 3d DCA 1962).
In one of the earliest cases concerning search and seizure, Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the United States Supreme Court stated:
It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way namely by silent approaches and slight deviations from legal modes of procedure. This can only be alleviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of *1048 courts to be watchful for the constitution as rights of the citizen, and against a stealthy encroachment thereon.
Like a boulder that has weathered many storms, the Boyd holding has been eroded. Yet, the core of Boyd conveys a warning that transcends time and applies to this majority’s incremental reduction of constitutional protections.
The Fourth Amendment generally prohibits warrantless entry into a person’s home, including entries to make arrests. Illinois v. Rodriguez, — U.S. —, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Warrantless searches are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
In Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the United States Supreme Court considered a warrantless and non-consensual entry into a suspect’s home in order to make an arrest. The Court stated:
To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home. This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present.
Payton v. New York, 445 U.S. at 573, 100 S.Ct. at 1373 (quoting United States v. Reed, 572 F.2d 412 (2d Cir.), cert. denied, 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978)). After Payton, clearly all non-consensual entries for the purposes of arrest were per se unreasonable under a Fourth Amendment analysis. Payton, 445 U.S. at 574, 100 S.Ct. at 1373.
The bright line rule in Payton has since faded to muted gray. In Griffin v. State, 419 So.2d 320 (Fla.1982), the Florida Supreme Court considered a case where police officers entered a home to make an arrest. Two undercover officers entered the defendant’s home to complete a drug transaction. During the transaction, one of the officers left and returned accompanied by other officers.
The Florida Supreme Court distinguished Griffin from Payton because the officers in Griffin accompanied an officer who had consent to return to the defendant’s home. The court held that the officer who left had an implicit consent to return and was free to bring others. Since the uninvited officers who entered the home were in the “company” of one officer who had consent, no violation of Payton or the Fourth Amendment had occurred:
[T]he agent was free to bring others with him when he utilized his invitation to return, and the policemen were not acting improperly so long as they were in his company. [Emphasis added.]
Griffin v. State, at 322.
In State v. Fernandez, 538 So.2d 899 (Fla. 3d DCA 1989), this court extended the Griffin rationale to situations where instead of undercover officers being present and returning, confidential informants were used. Thus, where a confidential informant returned to a defendant’s home accompanied by police officers who then made an arrest, the officers did not violate Fourth Amendment warrant requirements.
The defendant in Fernandez attacked the consensual nature of the entry by asserting that the informant had not technically returned with the officers because, for his safety, he had remained at the threshold of the dwelling. In arriving at its finding of consensual entry, this court further explained:
Moreover, this result is not changed by the fact that the returning officer or informant technically stops at the threshold of the premises, while the accompanying police officers actually enter the said premises and effect an arrest therein.
Fernandez v. State, 538 So.2d at 900.
The progression of substantive case law has gone from no entry without a warrant — to express consensual entry of a police officer returning to the dwelling — to express consensual entry of an informant returning to the dwelling — to implied con *1049 sensual entry of those in the company of the person with express consent.
However, in the case before us, the trial court found:
Although Officer Zayas would have had implied consent to reenter the Defendant’s apartment, the evidence presented m this cause was that Officer Zayas was not one of the officers who, without a warrant, entered the Defendant’s apartment in order to arrest the Defendant; nor did Officer Zayas accompany the take-down officers who did enter the Defendant’s apartment.
Now, the majority demonstrated its judicial Zeitgeist and took the law one step further by not requiring that the “entering” officers be accompanied by the officer having consent to return. This amounts to an impermissible and unconscionable finding that the unaccompanied “entering” officers had somehow acquired consent from a third party to enter a defendant’s house for the purpose of making a warrantless arrest. As the trial court correctly noted:
To rule otherwise would ... allow an undercover police officer who consentually [sic] entered the Defendant’s premises to exit the premises, call arresting officers, have his dinner at his leisure and then return after a period of time to the premises after a Defendant has been arrested. Such cannot be the law.
The majority attempts to diminish the impact of the officer’s absence by stating: “[T]he record is silent as to where the undercover officer stood while the backup officers entered the apartment.” The record may be silent as to where he “stood,” but the record is clear he was not standing anywhere near the apartment.
The record is not silent, but rather reflects the unmistakable fact that the officer simply did not return with the other officers. The trial court specifically found:
There is evidence this officer did not return ... that’s my findings of fact ... I find factually, he did not return with the investigating officers....
On a motion to suppress, it is the trial court: (1) who is the trier of both fact and law; (2) who determines the credibility of the witnesses and the weight of the evidence; (3) whose determinations concerning questions of fact must be accepted by appellate courts; and (4) whose resolution of conflicting evidence mil not be disturbed on appeal. Gonzalez v. State, 578 So.2d 729 (Fla. 3d DCA 1991); State v. Belcher, 520 So.2d 303 (Fla. 3d DCA), review denied, 529 So.2d 695 (Fla.), cert. denied, 488 U.S. 912, 109 S.Ct. 270, 102 L.Ed.2d 258 (1988); Harvey v. State, 502 So.2d 1305 (Fla. 1st DCA 1987); Dooley v. State, 501 So.2d 18 (Fla. 5th DCA 1986); State v. Guerra, 455 So.2d 1046 (Fla. 3d DCA 1984), review denied, 461 So.2d 114 (Fla.1985); State v. Garcia, 431 So.2d 651 (Fla. 3d DCA 1983); State v. Favaloro, 424 So.2d 47 (Fla. 3d DCA 1982); State v. Melendez, 392 So.2d 587 (Fla. 4th DCA 1981); State v. Battleman, 374 So.2d 636 (Fla. 3d DCA 1979); Ponder v. State, 323 So.2d 296 (Fla. 3d DCA 1975); State v. Thomas, 212 So.2d 910 (Fla. 1st DCA 1968); Cameron v. State, 112 So.2d 864 (Fla. 1st DCA 1959); see also Stone v. State, 378 So.2d 765 (Fla.1979), cert. denied, 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980).
It may be that as in Boyd, this is the mildest and least repulsive form of a violation of constitutional protections; yet it is illegitimate and unconstitutional. Though the majority may accept this slight deviation from legal modes of procedure, I find it an abhorrent pejoration of, and an encroachment into, inalienable constitutional rights (not to mention the imbroglio into which it transforms Fourth Amendment requirements).
The future will judge us not by how we have given up our precious rights and freedoms — but rather by how we have jealously guarded them. I wholeheartedly agree with the trial court that the State “failed to meet its burden of proving that the war-rantless search and seizure of evidence in the Defendant’s home was reasonable.” Accordingly, I would affirm.

. The actual wording of the quotation which refers to “the poorest man in his cottage” is: It may be frail — it’s roof may shake — the wind may blow through it — the storm may enter— the rain may enter — but the King of England cannot enter — all his force dares not cross the threshhold of the ruined tenement. William Pitt, Earl of Chatham, from a Speech on the Excise Bill (1763).

. Writs of Assistance first became effective in England in 1662. In 1696 an act of William III made them applicable to the American colonies.