# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

No. 1D16-3290

———————————————

WILLIE ALLEN LYNCH,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

———————————————

On appeal from the Circuit Court for Duval County.
Mark Borello, Judge.

December 27, 2018

PER CURIAM.

A jury convicted Willie Allen Lynch of selling crack, and the court sentenced him to eight years in prison. Lynch now appeals, raising a host of issues. We affirm.

## I.

In late 2015, undercover officers bought crack cocaine from someone who called himself "Midnight." The officers later identified Lynch as the seller, and the State brought charges. At trial, Lynch's sole defense was misidentification—that he was not the man known as Midnight. To prove otherwise, the State introduced testimony of the two undercover officers, both of whom positively identified Lynch as the man who sold them crack.

The officers routinely drove into high-crime areas, posing as drug buyers looking for drug sellers. As they drove one night, a man abruptly flagged them down, identified himself as Midnight, and asked if they "were good." One undercover officer responded that he needed "$50 hard," meaning $50 worth of crack. After Midnight retrieved crack from a nearby building, the officer gave Midnight some money, and Midnight gave the officer crack.

Typically, the officers captured transactions like these using a special recording system. But because Midnight had approached them so suddenly, the officers were unable to activate the system. One officer, though, used his cell phone to surreptitiously snap photos of Midnight leaning into the car. Then, after completing the transaction—and to avoid revealing themselves as undercover operatives—the officers left without arresting Midnight.

Sometime later, the officers sent the cell phone photos, along with the name Midnight, to a crime analyst. In response, that analyst provided the officers Lynch's name and photo. The analyst told the officers Lynch was a possible match to the man in the cell phone photos, and the officers promptly concluded that Lynch and Midnight were indeed one and the same.

At a pre-trial deposition, the crime analyst testified about the process that led her to make the match. She said she was emailed a photograph (one from the cell phone), the street address where the sale occurred, and the name "Midnight." Turning to law-enforcement databases, she looked up those who had been previously arrested at the address. When that yielded nothing, she searched for those with a nickname "Midnight." She found several people with that alias, but she found none who looked like the man the officers photographed. She then used a facial-recognition program that compared the photo officers took against photos in law-enforcement databases. She described the facial-recognition search process this way:

> I took the image [of Midnight], uploaded into the computer program. There are certain selections. You can let it be an open ended search. In this case I know the race and I know the gender, this case being a black male, and I also wanted to only consider Duval County booking photos. . . .

So those selections were chosen in this case with a photo and then just hit search and it gives you a photo— (unintelligible)—almost like a photo line-up.

She went on to say that "the analyst makes a judgment as to whether or not this is the individual and sends that information back to the detective that requested it." She also said the software would assign a number of stars indicating the likelihood of a match, but she did not know how many stars were possible or how the program worked. She did remember though that Lynch's photograph had only one star next to it, but it was the highest ranked match. After identifying Lynch as a potential match, she forwarded his information—along with his entire rap sheet—to the officers. The officers then positively identified him as the man they knew as Midnight, the man who sold them the crack.

## II.

The case went to trial, and the undercover officers testified, but the crime analyst did not. Shortly before trial, Lynch (then proceeding pro se) moved for a continuance, arguing he was not prepared to go to trial because he had only recently been allowed to represent himself. The court denied the request. Lynch moved to incur costs for a private investigator, which the court granted. Lynch also moved to suppress evidence of the officers' earlier identification, as well as to preclude any in-court identification. The court agreed to hear that motion during trial and later denied it. Following jury selection, part of which featured Lynch in jail attire and shackles, the court heard Lynch's pro se motion seeking to compel the State to produce the photographs of the other "Midnights" contained in the database, as well as the other photographs the facial-recognition program returned. The court denied the request, ultimately concluding the photos were not relevant. Finally, after jury selection but before the trial began, the trial court revoked Lynch's self-representation, reappointing the public defender who conducted the trial.

III.

A.

Lynch's first argument on appeal is that he should have had access to the other photos the facial-recognition system returned as possible matches, the ones the analyst deemed nonmatches and did not forward to the detectives. Lynch contends that those other photos would have cast doubt on the State's case and that by not providing those photos, the State violated *Brady v. Maryland*, 373 U.S. 83 (1963). We reject this argument.

To prevail under *Brady*, Lynch had to show "that there is a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Strickler v. Greene*, 527 U.S. 263, 289 (1999) (marks omitted). He has not made that showing here. First, because he cannot show that the other photos the database returned resembled him, he cannot show that they would have supported his argument that someone in one of those photos was the culprit. Second, his attorney stated on the record that she did not want to call the analyst who evaluated the photos because the analyst's testimony that Lynch was the man in the officers' photos would only corroborate the officers' testimony. And third, the jury convicted only after comparing the photo the officers took to Lynch himself and to confirmed photos of Lynch. Under these circumstances, we cannot conclude that Lynch met his burden to demonstrate prejudice under *Brady*.

B.

Lynch also argues that the trial court should have suppressed the officers' in-court and out-of-court identifications. We review only for an abuse of discretion, *Jenkins v. State*, 96 So. 3d 1110, 1112 (Fla. 1st DCA 2012); *Thomas v. State*, 748 So. 2d 970, 981 (Fla. 1999), and we reject Lynch's argument. Use of an identification obtained through unnecessarily suggestive procedures violates a defendant's due process rights. *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012). But a suggestive pre-trial identification is admissible if "despite its suggestive aspects, the out-of-court identification possesses certain features of reliability." *Grant v. State*, 390 So. 2d 341, 343 (Fla. 1980) (citing *Manson v.*

4

*Brathwaite*, 432 U.S. 98, 110, (1977)). The admissibility of an out-of-court identification is controlled by a two-part test that requires the court to determine "(1) whether the police used an unnecessarily suggestive procedure to obtain the out-of-court identification; and (2) if so, considering all the circumstances, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." *Id*. For in-court identifications, the analysis is slightly different, but the focus remains on the totality of the circumstances. *Edwards v. State*, 538 So. 2d 440, 423 n.6 (Fla. 1989). "An in-court identification may not be admitted unless it is found to be reliable and based solely upon the witness' independent recollection of the offender at the time of the crime, uninfluenced by any intervening illegal confrontation." *Hicks v. State*, 189 So. 3d 173, 175 (Fla. 4th DCA 2016) (marks omitted) (citing *Fitzpatrick v. State*, 900 So. 2d 495, 519 (Fla. 2005)).

Here, even assuming there was an unnecessarily suggestive procedure, we are convinced—considering the totality of the circumstances—that there was no substantial likelihood of irreparable misidentification. In reaching this conclusion, we have considered the five "*Biggers* factors":

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Grant*, 390 So. 2d at 343 (quoting *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)). Here, detectives viewed the suspect for only a few minutes, but they were face-to-face with him for much of that time. *Cf. Perez v. State*, 648 So. 2d 715, 719 (Fla. 1995) (identification was reliable where witness saw suspect for one minute from a distance of eight to ten feet). And the facts suggest the detectives were attentive during their interaction, even snapping photos. One of the officers testified that he was certain that Lynch was the suspect, and the other testified to having seen Lynch in the area before the offense. Only about eight days passed from the drug purchase to the time officers identified Lynch as the culprit.

5

We also find this case factually similar to *Manson v. Brathwaite*, 432 U.S. 98 (1977). In that case, an undercover officer purchased heroin from someone at a suspected drug house. *Id.* at 98-101. The officer viewed the suspect for two or three minutes from a couple feet away. *Id.* After the exchange, the officer drove to police headquarters and gave a description of the drug seller. *Id.* Another officer then produced a photo of a person he believed matched the description and left it with the first officer to review. *Id.* Two days later, the first officer viewed the photo and positively identified the suspect. *Id.* The Supreme Court determined that the procedure was unduly suggestive and proceeded to weigh the five *Biggers* factors. *Id.* Ultimately, the Court determined the officer's identification was reliable considering the circumstances and noted that "[j]uries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." *Id.* at 117. The same is true here. We find no abuse of discretion in the court's admission of the in-court and out-of-court identifications.

## C.

Lynch next argues that the trial court was wrong to revoke his right to self-representation, an issue we review for an abuse of discretion. *Kearse v. State*, 605 So. 2d 534, 537 (Fla. 1st DCA 1992). Criminal defendants have a Sixth Amendment right to self-representation, *Indiana v. Edwards*, 554 U.S. 164, 170-71 (2008), but the right is not absolute and certainly "is not a license to abuse the dignity of the court or to frustrate orderly proceedings." *Brown v. State*, 45 So. 3d 110, 115 (Fla. 1st DCA 2010). In this case, the court allowed Lynch to represent himself for a portion of the proceedings, but after concluding Lynch could not behave properly, the court revoked the self-representation and appointed counsel. The court specifically found that Lynch was "unwilling to or incapable of abiding by the rules of the court and procedure, and therefore has shown [] that he is not competent to represent himself." That conclusion was supported by the record, which showed Lynch continually interrupted the judge, made outbursts, and even had to be removed from the courtroom for a short time. (The court also heard from Lynch's sister, who told the court that she did not think Lynch was capable of representing himself

6

adequately.) Considering all relevant circumstances, we find no abuse of discretion.

## D.

Finally, Lynch argues that the cumulative effect of several errors deprived him of his right to a fair trial. He cites a reference in the State's opening argument to the officers' operating in high-crime areas and the officers' later testimony to the same point. We agree with the State that these comments and testimony—individually or combined with everything else—do not warrant a new trial. Similarly, we conclude that the officer's testimony that Lynch's photo was in a "known database"—alone or combined with the other testimony—did not deprive Lynch of a fair trial.

As part of his cumulative-error argument, Lynch also notes that he appeared in jail clothes and shackles during part of jury selection. Lynch conducted the jury instruction himself, proceeding pro se at the time. To avoid unfair prejudice and to protect the presumption of innocence, criminal defendants have a general right to appear unshackled and in non-prison clothes whenever the jury is present. *See Bryant v. State*, 785 So. 2d 422, 428 (Fla. 2001); *Heiney v. State*, 447 So. 2d 210, 214 (Fla. 1984). But a defendant's appearance in shackles or prison clothes does not automatically warrant a new trial. Here, Lynch asked the trial court in the middle of jury selection whether the court could remove the shackles. The court responded that "the sheriff's office controls the security," and Lynch made no further inquiry about the shackles. As to the clothes, Lynch asked after a lunch break whether he could change clothes. The court noted it was the "first time [it] heard from [Lynch] that [he] would like to be in some other clothes," and the court allowed Lynch to change.

We conclude that Lynch's limited appearance in shackles and prison garb at jury selection does not warrant a new trial. Lynch did not ask to strike the jury panel that saw him, and he accepted the jury as selected. When he raised the shackle issue, he made no further inquiry after the court apparently deferred to the sheriff's office. Counsel in this case acquiesced to proceeding without further inquiry. *See Finney v. State*, 660 So. 2d 674, 683 (Fla. 1995) (noting that where "[n]o objection was made to the court's decision to defer to the sheriff on the matter," the issue was not preserved

7

for appeal); *Eberhardt v. State*, 550 So. 2d 102, 104 (Fla. 1st DCA 1989) ("Although we conclude that it was error for the court to permit the venire to see [defendant] in the courtroom in prison clothes, defense counsel did not properly preserve this objection as a basis for reversal.").

IV.

We have considered and rejected Lynch's remaining arguments, including his argument that the trial court held an insufficient *Richardson* hearing, his argument that the trial court abused its discretion in denying his motion for a continuance, and his argument that the trial court should have granted a mistrial. We have carefully considered all arguments presented, and we conclude that none presents a basis for reversal.

AFFIRMED.

JAY, WINSOR, and M.K. THOMAS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Andy Thomas, Public Defender, and Victor D. Holder, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Trisha Meggs Pate, Assistant Attorney General, Tallahassee, for Appellee.