473 So.2d 1260 (1985)
Larry Donnell BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 62922.
Supreme Court of Florida.
June 27, 1985.
Rehearing Denied August 30, 1985.
*1263 James Marion Moorman, Public Defender and Robert F. Moeller, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Jim Smith, Atty. Gen., and Ann Garrison Paschall, Asst. Atty. Gen., Tampa, for appellee.
BOYD, Chief Justice.
This cause is before the Court on appeal of convictions of first-degree murder and burglary and the death sentence imposed for the capital offense. The death sentence gives the Court jurisdiction of the appeal. Art. V, section 3(b)(1), Florida Constitution. Brown also appeals the sentence imposed for the offense of burglary. We affirm the convictions, the sentence for burglary, and the sentence of death.
On February 5, 1981, workers from a social service agency found eighty-one-year-old Anna Jordan dead in her St. Petersburg home. The victim had been bound and sexually battered before she died of asphyxiation. The police found that the victim's house had been ransacked and a portable television taken. While in jail on an unrelated charge, Larry Brown implicated George Dudley in the crimes and led the police to the purchaser of the stolen television. The police confronted Dudley with Brown's accusations. Dudley admitted his presence during the crimes, but informed the police that Brown planned the burglary, bound and sexually battered the victim, and sold the television set in a bar for twenty dollars. The buyer of the television corroborated Dudley's story. Dudley was allowed to plead guilty to burglary and second-degree murder and became the main witness against Brown, who was indicted for first-degree murder and burglary with an assault.
At trial Dudley testified that Brown bound the victim and struck her once. Dudley also stated that Brown's stepson, Ricky, who had not been located by the *1264 date of the trial, committed the sexual battery while Brown ransacked the house. Dudley claimed to have just stood around during the commission of the crimes. The medical examiner testified that certain physical evidence found at the scene indicted that the perpetrators had gagged the victim in addition to binding her arms and neck. The medical examiner stated clearly that the victim died of asphyxiation but could not state with certainty whether the airway obstruction resulted from the binding, from a gag, or from manual strangulation.
The jury found Brown guilty as charged on both counts. At the conclusion of the penalty phase of the trial, the jury recommended that Brown be sentenced to life imprisonment for the murder. The trial court overrode the jury recommendation and proceeded to impose the death penalty after finding the aggravating circumstances far outweighed any mitigating circumstances. Brown was also sentenced to a consecutive life sentence for the offense of burglary during which an assault was committed.
Brown presents many alleged errors in his convictions and sentences. After a careful examination of the record, we conclude that no reversible error occurred at the conviction phase of trial. Furthermore, we find that the trial court acted correctly in overriding the jury recommendation of life imprisonment and imposing a sentence of death.
Brown argues first that the trial court erred in overruling his objection to the prosecutor's remarks in closing argument about attempts by the defense to intimidate Dudley. We have examined these remarks in light of the standard set forth in Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), and find the remarks did not deprive Brown of a fair trial. By failing to object at trial, Brown waived any error in alleged comments on his failure to present evidence. See Maggard v. State, 399 So.2d 973, 976 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981).
We also reject Brown's argument that the trial court erred by not providing meaningful relief for a state discovery violation and by allowing hearsay testimony concerning the relationship between Brown and his stepson, Ricky. The trial court conducted a Richardson[1] inquiry, found the state had inadvertently committed a substantial discovery violation, and remedied the violation by refusing to admit into evidence a photographic identification of Ricky made by Dudley and by forbidding any mention by Dudley of Ricky Brown's last name. We find the trial court's actions "remedied in a manner consistent with the seriousness of the breach," Zeigler v. State, 402 So.2d 365, 372 (Fla. 1981), cert. denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982), any discovery violations. Brown was not entitled to a continuance because he obviously knew about Ricky at the time of Dudley's pre-trial statement. The alleged hearsay testimony concerning the family relationship between Brown and Ricky was either admissible under section 90.804(2)(d), Florida Statutes (1981), as a statement of family history by the unavailable declarant Ricky, or was harmless error in light of the compelling evidence of guilt against Brown.
We also find no merit in the argument that the burglary with assault charge should have been dismissed for failing to specify the nature of the assault. Even if the failure to specify the facts of the assault rendered the indictment deficient, the deficiency does not constitute fundamental error. Brown had access to the medical examiner's report on the victim's injuries as well as Dudley's deposition testimony about the crimes. Brown has failed to demonstrate any prejudice to his defense. The trial court properly refused to dismiss the burglary count.
Brown contends that the trial court should have granted in their entirety his motions for particulars of the offenses *1265 charged. We disagree. The trial court granted one of Brown's motions in part, and the state responded with a statement of particulars in compliance with Florida Rule of Criminal Procedure 3.140(n). The rest of Brown's motions essentially asked the state to prove the entire case before trial. The trial court acted correctly in denying the remainder of Brown's motions for particulars.
We also disagree with Brown's argument that the jury should have been provided with special verdict forms which would have indicated whether the first-degree murder conviction was based upon premeditated murder or felony murder. Neither constitutional principles nor rules of law or procedure require such special verdicts in capital cases. The sentencing and reviewing courts can determine that a defendant may not constitutionally receive the death penalty where that defendant "aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." Enmund v. Florida, 458 U.S. 782, 797, 102 S.Ct. 3368, 3376, 73 L.Ed.2d 1140 (1982). The special jury verdict requested by Brown would not have resolved this question.
We note that Brown has not challenged the sufficiency of the evidence presented at trial to convict him as charged. Our review of the entire record convinces us that the evidence was quite sufficient to support both convictions.
Brown raises two issues concerning the propriety of his consecutive life sentence for burglary. He first claims that the trial court failed to orally impose sentence on this conviction at the sentencing hearing. The supplemental record of the sentencing hearing shows that the trial court sentenced Brown on the burglary conviction at a continuation of the sentencing hearing held later that same day; hence, there was no procedural error.
Brown also argues that it was error to impose a sentence for burglary because the burglary was the underlying felony and the conviction was based upon a felony-murder theory. The premise of appellant's argument is incorrect. Here the offense of first-degree murder was established by proof of premeditation. Therefore, the crimes of murder and burglary with an assault were clearly separate offenses, properly subject to separate prosecutions, convictions, and sentences.
Appellant presents a large number of challenges to the sentence of death. He argues that improper aggravating circumstances were considered by the sentencing judge; that valid mitigating circumstances were excluded from consideration; that the sentence of death is inappropriate as a matter of law on several grounds; and that the process by which the sentence of death was imposed was constitutionally deficient on several grounds. We will briefly address each of the arguments.
Appellant argues that the trial judge committed error requiring reversal of the death sentence when he remarked on the record that appellant had "led a parasitic existence." Appellant argues that this "finding" was not a valid aggravating circumstance and that it was not supported by evidence. This argument is without merit because the judge's oral comment was not a part of the formal written findings of fact in support of the sentence of death prepared in accordance with section 921.141(3), Florida Statutes (1981). A comment of this kind is not necessarily a finding of a non-statutory aggravating circumstance. See Vaught v. State, 410 So.2d 147, 151 (Fla. 1982). There is no showing here of improper influence of this remark on the process of weighing aggravating and mitigating circumstances.
Appellant argues that there was error in the court's finding, as an aggravating circumstance, that appellant "was on parole for Burglary at the time of this offense having been sentenced to four (4) years in the Department of Corrections on March 14, 1978." Appellant says that this is not a clear finding of the statutory aggravating circumstance authorized by section *1266 921.141(5)(a) and that the factual support for the finding was deficient in that it was based on a presentence investigation report rather than direct documentary evidence.
It is well settled that a person on parole from a sentence of imprisonment continues to be under sentence of imprisonment for purposes of section 921.141(5)(a). White v. State, 403 So.2d 331 (Fla. 1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983); Aldridge v. State, 351 So.2d 942 (Fla. 1977), cert. denied, 439 U.S. 882, 99 S.Ct. 220, 58 L.Ed.2d 194 (1978). To have been technically accurate, the trial judge should have found that appellant was under sentence of imprisonment, giving in support of the finding the fact of his parole. This minor inaccuracy does not affect the validity of the judge's finding of this aggravating circumstance.
Appellant's argument that his having been on parole could only properly be established by court or corrections documents is also without merit. The purpose of the requirement that presentence investigation reports be supplied to capital defendants before sentencing is to enable them to explain or refute any inaccurate or misleading information contained in the reports. See Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). Appellant did not and does not now dispute the fact that he was on parole at the time of the offense. It was proper for the sentencing judge to rely on information from the presentence investigation report in finding the aggravating circumstance.
Appellant next argues that the court committed several errors in connection with the finding that "defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person." § 921.141(5)(b). In support of this finding the court referred to appellant's convictions for attempted second-degree arson in 1977 and aggravated battery in 1981. Appellant argues that the crime of attempted arson of which he was convicted was not a crime of violence, that the battery was improperly considered because it took place subsequent to the capital felony, that the arson conviction was not adequately proven, having been found on the basis of the presentence investigation rather than documentary evidence, and that consideration of the arson conviction after it was kept from the jury as a sanction for the state's discovery violation was improper and obviated the effect of the sanction.
Appellant says that arson of an unoccupied structure under section 806.01(2), Florida Statutes (1977), is not a violent crime and that under Mann v. State, 420 So.2d 578 (Fla. 1982), the sentencer must look at the definition of the previous offense and not the facts of the previous offense. Appellant misreads Mann; evidence of the circumstances of the previous offense may be considered. See Mann v. State, 453 So.2d 784 (Fla. 1984). Here the court considered information from the presentence investigation concerning the arson incident. That information, which the defendant had the opportunity to (but did not) explain, rebut, or deny, showed the arson conviction to have been based on a violent incident.
Appellant's argument that his aggravated battery conviction could not be considered in support of the section 921.141(5)(b) aggravating circumstance because the offense occurred after the capital felony is without merit. The aggravated battery conviction was entered previous to the sentencing for the capital felony. Lucas v. State, 376 So.2d 1149 (Fla. 1979). As for the argument that it was improper for the judge to consider evidence that was excluded from consideration by the jury, we find that this is also without merit. See Spaziano v. State, 433 So.2d 508 (Fla. 1983), aff'd, ___ U.S. ___, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); White v. State, 403 So.2d 331 (Fla. 1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983).
Next appellant contends that the trial court erred in finding that the capital felony was committed in the course of the crimes of burglary and rape as a basis for *1267 the statutory aggravating circumstance of section 921.141(5)(d). The trial court in its sentencing order found: "The jury has found by its verdict that this capital felony was committed while the Defendant was engaged in the commission of a burglary and rape." Appellant points out that the indictment charged him with burglary with intent to commit theft or rape and that the court instructed the jury that to convict on the burglary charge it would have to find entry with intent to commit theft. Appellant is correct in the conclusion that the jury verdicts did not represent a finding that appellant committed rape. This conclusion, however, does not undermine the validity of the finding that the section 921.141(5)(d) aggravating circumstance was present.
First, the aggravating circumstance is adequately shown by the evidence that the murder was committed in the course of a burglary. The trial court's reference to the jury verdict and the rape may be regarded as harmless surplusage. Second, the evidence clearly showed not only burglary with intent to commit theft but also that a rape took place in the course of the burglary. The accomplice's commission of rape properly provides additional support for the finding of this aggravating factor, if any additional support were needed.
Appellant also argues that relying upon the murder being committed in the course of a burglary as an aggravating circumstance was improper because the burglary also supplies an essential element of the murder conviction under the felony murder doctrine. Even if the premise of this argument  that the murder conviction rests upon the felony-murder doctrine  were correct, the argument would be without merit. Application of the commission-during-felony aggravating circumstance is permissible even though the murder conviction itself rests on the felony-murder doctrine and both are based on the same felony. White v. State, 403 So.2d at 335-36. Moreover, the premise is not correct: here the evidence was sufficient to prove premeditated murder so the felony-murder rule is not in question.
Appellant argues that the trial court erred in giving improper double consideration to a single feature of the criminal episode in finding the aggravating factors that the murder was committed in the course of a burglary and was committed for pecuniary gain. Appellant relies on Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981) and Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). In Maggard, the burglary and pecuniary gain factors were found to have been improperly doubled "under the peculiar facts of the case." 399 So.2d at 977. In Provence, the improper double consideration was given to pecuniary gain and robbery, both of which referred "to the same aspect of the defendant's crime." 337 So.2d at 786. The present case is significantly different. The factor of pecuniary gain was established by appellant's theft and subsequent sale of the victim's television set. The evidence showed, however, that the offense of burglary had a much broader significance than simply being the vehicle for a theft. The victim was beaten, raped, and strangled. While she was tormented, her home was ransacked. Thus the burglary had a broader purpose in the minds of the perpetrators than a burglary seen merely as an opportunity for theft. On the basis of these facts, we find that the burglary factor and the pecuniary gain factor were separate characteristics of appellant's crime and were properly given separate consideration.
Appellant next argues that the trial court erred in finding that the murder was especially heinous, atrocious, or cruel. Relying on State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), appellant says that there was nothing special to set the crime apart from the norm of first-degree murders. The evidence as to cause of death, appellant argues, was not clear, and appellant cannot be charged with aggravation *1268 on the ground of the victim's rape by one of the accomplices. While conceding in his brief that the victim's death was "not pleasant," appellant argues that there was nothing extraordinary about the murder.
In support of his conclusion, the trial judge found that the victim was eighty-one years old, a semi-invalid, that she was beaten, raped, and killed by asphyxiation; that her hands had been tied behind her back and a gag placed in her mouth; and that either the gag or a garrote placed around the victim's neck caused the death.
Although state's witness Dudley only said he saw appellant strike the victim once, the evidence showed that she had been struck several times about the head; there were numerous bruises. A police investigator who went to the crime scene to collect evidence testified that there was a strip of towel material knotted tightly around the victim's neck. Dudley testified that he saw appellant place this strip around the victim's neck and pull it very tight. The medical examiner testified that she believed a gag had been put in the victim's mouth and that the gag may have caused death by asphyxiation. Witness Dudley testified that the third accomplice raped the victim while appellant looked around for valuables. Based on all the evidence, direct and circumstantial, eyewitness and forensic, we believe that finding of the heinousness factor is adequately supported.
Appellant contends that the trial court erred in finding that the murder was committed in a cold, calculated, and premeditated manner without pretense of moral or legal justification. § 921.141(5)(i), Fla. Stat. (1981). While there was obviously no pretense of moral or legal justification, this Court has held that the "cold, calculated, and premeditated" component of this aggravating circumstance requires some sort of heightened premeditation, something in the perpetrator's state of mind beyond the specific intent required to prove premeditated murder. Jent v. State, 408 So.2d 1024, 1032 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982). We have said that heightened premeditation and advance planning are the kinds of factors that properly bear on the "cold, calculated" circumstance. McCray v. State, 416 So.2d 804, 807 (Fla. 1982) (circumstance ordinarily applies to "executions or contract murders"). The factor places a limitation on the use of premeditation as an aggravating circumstance in the absence of some quality setting the crime apart from mere ordinary premeditated murder. Combs v. State, 403 So.2d 418, 421 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982). Upon review of the evidence we conclude that this crucial added quality of heightened premeditation was not shown here. We therefore conclude that there was insufficient evidence to prove that the murder was committed in a cold, calculated, and premeditated manner.
Appellant next argues that the trial court failed to adequately consider his evidence of nonstatutory mitigating circumstances. That the court's findings of fact did not specifically address appellant's evidence and arguments does not mean they were not considered. The trial court obviously rejected appellant's showing as having no valid mitigating weight. We perceive no error in this determination.
Appellant next argues that his sentence of death is improper in view of the disparate prosecutorial and judicial treatment of accomplice Dudley, who received a sentence of life imprisonment upon a plea of guilty to second-degree murder. Appellant argues that Dudley's participation in the crimes was as substantial as appellant's. The evidence introduced at trial showed that appellant was the leader whose role in the murder was more significant than those of his accomplices. Dudley's participation was minor compared to appellant's. Moreover, Dudley's plea, sentence, and agreement to testify for the state were the products of prosecutorial discretion and negotiation. See Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Witt v. State, 342 So.2d 497 (Fla.), cert. denied, 434 U.S. 935, *1269 98 S.Ct. 422, 54 L.Ed.2d 294 (1977). We do not find any infirmity in appellant's sentence based on the unequal fate of Dudley.
Next appellant argues that his death sentence violates the eighth amendment based on the claim that he did not kill, intend to kill, attempt to kill, or contemplate that life might be taken or lethal force used, relying upon Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). The theory of appellant's argument is that because the medical evidence did not determine whether the fatal asphyxiation was effected by gagging or by strangulation, and because eyewitness testimony only had appellant placing the towel around the victim's neck, it is not clear that appellant caused the death and the evidence is open to the possibility that one of the other two men did it. Appellant argues further that even if the evidence showed that his act caused the death, Enmund prohibits a sentence of death because there is insufficient proof that appellant specifically intended to effect death.
First of all, we note the factual distinctions between this case and Enmund. Enmund was not at the immediate scene of the murders; he was only constructively present as an aider and abettor of the underlying felony. Even if this case were properly considered a felony-murder case, it would be different from Enmund in that here appellant was a personally present principal in the underlying felony of burglary and there was eyewitness testimony that he personally committed at least some violent acts against the victim, striking her and placing the towel tightly around her neck. Even if we were to accept appellant's assertion that no act of his was proven to have caused the death  that is, even if this were a felony murder case  the above factors would be sufficient to distinguish Enmund and justify the death sentence. See Hall v. State, 420 So.2d 872 (Fla. 1982); Ruffin v. State, 420 So.2d 591 (Fla. 1982). We do not base our decision of this issue on these distinctions from Enmund, however. We find that the Enmund principle is totally inapplicable to this case because this is a case of premeditated murder.
Although state's witness Dudley only said he saw Brown strike the victim once, the evidence showed that she had been struck several times about the head and that the eighty-one-year-old victim's head was violently grabbed and handled. Her head showed numerous bruises. A crime scene investigator testified that when he arrived at the scene there was a strip of towel material knotted tightly around the neck of the dead victim. Dudley testified that he saw Brown tie this strip around her neck. Dudley testified that Brown made a slip knot, put the strip around her neck, and then pulled it very tight. It appeared to the witness that Brown was trying to strangle the elderly, five-foot-tall, 100-pound woman. The witness also testified that he stood by as Brown searched the house for valuables and the third accomplice raped the victim. Dudley said that at no time did the rapist put his hands on the victim's neck, nor did the witness himself do so.
There was testimony from at least two witnesses that some time after the murder and before the arrest, appellant Brown made a statement to the effect that he had killed a white woman. There was testimony that he later instructed at least one of those present not to tell anyone about what he had said.
The medical examiner believed that the victim had been gagged and that the gag may have caused the asphyxiation. But the only witness who was at the scene said nothing about a gag. Moreover, when a cloth is forcefully stuffed into the mouth of an elderly person (as the medical evidence showed) rather than simply being placed over the mouth, it can be inferred that it was done with intent to block the air passage and not just to muffle any cries for help.
Therefore the evidence was clearly sufficient to support the conclusion that the victim died by the act of appellant. Enmund is inapplicable because of the adequate evidence of premeditation.
*1270 Appellant makes the further argument that even if his direct actions caused the victim's death, he still cannot be sentenced to death under Enmund because it was not established that he intended to cause death. This contention is, of course, without merit. Premeditation may be shown by circumstantial evidence. Hill v. State, 133 So.2d 68 (Fla. 1961); Larry v. State, 104 So.2d 352 (Fla. 1958).
If one person strikes another across the neck with a sharp knife or razor, and thereby inflicts a mortal wound, the very act of striking such person with such weapon in such manner is sufficient to warrant a jury in finding that the person striking the blow intended the result which followed.
Rhodes v. State, 104 Fla. 520, 523, 140 So. 309, 310 (1932). The same principle applies to one who tightens a garrote around the neck of another thereby causing asphyxiation. We therefore conclude again that the evidence was sufficient to show premeditation; Enmund and the felony murder rule are not applicable.
Appellant next argues that the trial court erred in sentencing him to death, after receiving the verdict of the jury recommending a sentence of life imprisonment. He relies upon Tedder v. State, 322 So.2d 908 (Fla. 1975), which set forth the following test: "In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Id. at 910. In overruling the recommendation of the jury, the trial judge found that there were several aggravating circumstances and no mitigating circumstances.
Section 921.141(3), Florida Statutes (1981), provides:
Notwithstanding the recommendation of a majority of the jury, the court, after weighing the aggravating and mitigating circumstances, shall enter a sentence of life imprisonment or death, but if the court imposes a sentence of death, it shall set forth in writing its findings upon which the sentence of death is based as to the facts:
(a) That sufficient aggravating circumstances exist as enumerated in subsection (5), and
(b) That there are insufficient mitigating circumstances to outweigh the aggravating circumstances.
In each case in which the court imposes the death sentence, the determination of the court shall be supported by specific written findings of fact based upon the circumstances in subsections (5) and (6) and upon the records of the trial and the sentencing proceedings. If the court does not make the findings requiring the death sentence, the court shall impose sentence of life imprisonment in accordance with s. 775.082.
This Court has recognized that where there are aggravating circumstances making death the appropriate penalty, and the jury's recommendation is not based on some valid mitigating factor (statutory or nonstatutory) discernible from the record, it is proper for the trial judge to overrule the jury's recommendation and impose a sentence of death. See e.g., Porter v. State, 429 So.2d 293 (Fla.), cert. denied, ___ U.S. ___, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); Bolender v. State, 422 So.2d 833 (Fla. 1982), cert. denied, 461 U.S. 939, 103 S.Ct. 2111, 77 L.Ed.2d 315 (1983); Stevens v. State, 419 So.2d 1058 (Fla. 1982), cert. denied, 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983); Miller v. State, 415 So.2d 1262 (Fla. 1982), cert. denied, 459 U.S. 1158, 103 S.Ct. 802, 74 L.Ed.2d 1005 (1983); McCrae v. State, 395 So.2d 1145 (Fla. 1980), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981); Johnson v. State, 393 So.2d 1069 (Fla. 1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981); Dobbert v. State, 375 So.2d 1069 (Fla. 1979), cert. denied, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980); Hoy v. State, 353 So.2d 826 (Fla. 1977), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978); Barclay v. State, 343 So.2d 1266 (Fla. 1977), cert. denied, 439 U.S. 892, 99 S.Ct. 249, 58 L.Ed.2d *1271 237 (1978); Douglas v. State, 328 So.2d 18 (Fla.), cert. denied, 429 U.S. 871, 97 S.Ct. 185, 50 L.Ed.2d 151 (1976). Upon our review of the evidence contained in the record, we find that there was nothing in mitigation to provide reasonable support for the jury's recommendation of a life sentence. We conclude that the Tedder test was satisfied and that the sentence imposed was appropriate under the law.
Finally, appellant raises several constitutional challenges to the process by which he was sentenced to death. He argues that (1) allowing the court to impose a sentence of death following a jury recommendation of life imprisonment violates his right against double jeopardy; (2) that the procedure whereby the jury makes a recommendation without stating its reasons while the sentencing judge makes written findings in support of a sentence of death violates principles of due process; and (3) that allowing a sentence of death following a recommendation of life by the jury violates the rule against cruel and unusual punishment by allowing the sentencer to ignore contemporary community standards.
The same double jeopardy argument was rejected by this Court in Douglas v. State, 373 So.2d 895 (Fla. 1979), and more recently in Spaziano v. State, 433 So.2d 508 (Fla. 1983). The argument that Bullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), requires a different result on federal constitutional grounds was recently rejected by the United States Supreme Court when it affirmed our Spaziano decision. Spaziano v. Florida, ___ U.S. ___, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984).
Appellant's argument that due process requires that a jury's recommendation for life or death be accompanied by reasons in writing is without merit. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
The argument that a sentence of death following a jury recommendation of life violates the eighth amendment by ignoring contemporary community standards and offending against the dignity of numan life is based on somewhat loose reasoning from Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). In essence the contention is thata a capital offender has a constitutional right to be sentenced by a jury. This contention is without merit. Spaziano v. Florida; Proffitt v. Florida.
We come now to the issue raised by our rejection of one of the aggravating circumstances found by the trial court, of whether the sentence of death may be affirmed even though the trial court erroneously found an invalid aggravating circumstance. Such an error does not necessarily require resentencing. E.g., Sireci v. State, 399 So.2d 964, 971 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). Here there are no mitigating circumstances and several valid aggravating circumstances. We conclude that the judge's finding that the murder was "cold, calculated, and premeditated," etc., did not injuriously affect the weighing process and does not require reversal.
The aggravating circumstances, properly found and supported by evidence, are as follows: (1) at the time of the capital offense, the offender was on parole from and therefore under a sentence of imprisonment; (2) at the time of sentencing he had previously been convicted of felonies involving the use or threat of violence; (3) the murder was committed while the offender was engaged in the commission of a burglary and while he was an accomplice in the commission of sexual battery; (4) the murder was committed for pecuniary gain; and (5) the murder was especially heinous, atrocious, or cruel.
There were no mitigating circumstances. We have compared all the facts and circumstances of this case with those presented in the many other capital appeals that have come before this Court and have found that death is the appropriate sentence and is not out of proportion to the sentences approved by this Court in similar cases.
For the reasons expressed above we affirm the judgments of conviction of first-degree *1272 murder and burglary. We affirm the sentence of imprisonment imposed upon appellant for the burglary conviction. We also affirm the sentence of death.
It is so ordered.
ADKINS, ALDERMAN, EHRLICH and SHAW, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion, in which OVERTON, J., concurs.
McDONALD, Justice, concurring in part, dissenting in part.
I concur with the conviction of first-degree murder. I dissent to the imposition of the death penalty.
I find merit in Brown's argument that the trial court erred in overriding the jury recommendation of life imprisonment and imposing the death penalty. This Court has long held that "[i]n order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). Applying the Tedder standard to the facts here, I find error in the sentence of death. Several factors justified the jury's life recommendation. The exact cause of the victim's asphyxiation was never determined, and the accomplice Dudley did not see Brown do more than bind the victim and strike her once. Dudley did not even know if the victim was alive or dead when he, Brown, and Ricky left her home. Dudley told the jury that Ricky committed the sexual battery on the victim while Brown searched the house for valuables. The jury could have believed that Ricky killed the victim during the sexual battery and that Brown never intended to do more than bind the victim to facilitate the burglary. The record failed to clearly establish that Brown killed, intended to kill, intended that a killing take place, or contemplated that lethal force would be employed as required by Enmund. The jury may also have believed that Dudley, who was permitted to plead guilty to second-degree murder, did more than just stand there while the crimes occurred around him. Indeed, the jury may also have believed Brown and Dudley were equally culpable and should not receive disproportionate sentences. The jury also heard the mitigating evidence that Brown had aided the police in other criminal cases and gave them the information needed to solve the crimes in this case. Brown's family history provided further mitigating evidence. I find the jury's recommendation of life imprisonment for Brown had a reasonable basis in the evidence. The trial court should have followed this recommendation.
Accordingly, I would affirm the first-degree murder conviction, but would vacate the death sentence and remand to the trial court with instructions to impose a sentence of life imprisonment without eligibility for parole for twenty-five years on the murder conviction.
OVERTON, J., concurs.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).