641 So.2d 391 (1994)
Crosley Alexander GREEN, Appellant,
v.
STATE of Florida, Appellee.
No. 77402.
Supreme Court of Florida.
July 7, 1994.
Rehearing Denied August 29, 1994.
*393 James B. Gibson, Public Defender and Michael S. Becker, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Kellie A. Nielan, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Crosley Alexander Green appeals his convictions for first-degree felony murder, two counts of robbery with a firearm, and two counts of kidnapping. He also appeals the sentences imposed, including a sentence of death. We have jurisdiction based on article V, section 3(b)(1) of the Florida Constitution.
Green was convicted of fatally shooting Charles Flynn in a Brevard County orange grove. Jurors recommended death for the murder conviction by an eight-to-four vote. The trial judge followed the jury's recommendation and sentenced Green to death. We affirm the convictions and sentences.
The record reflects these relevant facts: Late in the evening of April 3, 1989, Kim Hallock and Flynn, whom she had dated, drove to a park in Flynn's pickup truck. They parked near dunes in a wooded area and smoked marijuana. As they smoked, a sheriff's car drove by and shined its spotlight, but did not stop at the truck. After the sheriff's car passed, a man walked in front of the truck and stopped at the driver's door. He warned Hallock and Flynn to watch out for the police, then walked on.
A few minutes later, Flynn stepped outside the truck to relieve himself. Hallock testified that she soon heard Flynn say nervously: "Hold on. Wait a minute, man. Hold on. Put it down." She retrieved a gun from the truck's glove compartment and put it under some jeans on the seat next to her. She testified that when she looked outside the truck, she saw the man she had seen earlier. He was now walking around Flynn and carrying a gun. The man ordered Flynn to the ground, then asked if either of them had any money. Hallock gave him five dollars, but Flynn said he had no money.
The man then tied Flynn's hands behind his back with shoelaces. While tying Flynn's hands, the man's gun went off but did not injure Flynn. The man pulled Flynn off the ground, found a wallet in his pants, and threw it to Hallock, who counted $185.
The man ordered Hallock to start the truck and to move to the center seat. He put Flynn in the passenger seat and started driving. He forced Flynn and Hallock to ride with their heads down and held a gun to Hallock's side. During the ride, Flynn found the gun Hallock had hidden under the jeans. The man stopped the truck at an orange grove and tried to pull Hallock from the truck. Hallock freed herself and ran around the truck, but the man caught her, threw her to the ground, put a gun to her head, and threatened to blow her brains out. Flynn got out of the truck and fired a shot, but missed the man. Hallock jumped into the truck and locked the doors. She testified that she saw the man fire a shot. Flynn yelled for her to escape, and Hallock drove to a friend's house and called the police.
When police arrived at the orange grove, they found Flynn lying facedown with his hands tied behind his back. Authorities found a loaded .22-caliber revolver nearby. Flynn was alive when police arrived, but he stopped breathing several times and died of a single gunshot wound to the chest before paramedics arrived. Hallock later identified Green as the man she saw in the park.
In sentencing Green to death, the trial judge found four aggravating factors: (1) Green was previously convicted of a violent felony; (2) the capital felony was committed while Green was engaged in kidnapping; (3) the murder was committed for pecuniary gain; and (4) the murder was especially heinous, atrocious, and cruel. The judge found no statutory or nonstatutory mitigating factors. He also sentenced Green to four concurrent *394 twenty-year sentences for the robbery and kidnapping convictions. These terms were to be served consecutively to the death sentence.
Green raises nine issues on this direct appeal.[1]
He first argues that the trial court should not have admitted evidence of a police dog's scent tracking. He maintains there was insufficient predicate because the tracks could not be tied to Green. We find no merit to this argument.
Within hours of the murder, a police dog tracked footprints from the dunes area to a house where Green's sister lived. The footprints at the dune area were never identified as Green's, but the trial judge admitted the scent-tracking evidence over defense objection because the character and dependability of the dog were established, the officer who handled the dog was trained, and the evidence was relevant. In addition, there were indicia of reliability: the tracking occurred within hours of the crime and the area had been secured shortly after the crime occurred, both of which greatly reduced the danger of a trail being left after the crime and a mistaken scent, and there was a continuous track to the home of Green's sister. The trial judge found that although the scent tracking was the only evidence that established Green's identity, corroboration included admissions by Green, Green's presence at the crime scene near the time of the crime, and Green's presence at his sister's house earlier that day. We find a proper predicate for the admission of the scent-tracking evidence. See Tomlinson v. State, 129 Fla. 658, 176 So. 543 (1937).
We next find that the trial court correctly denied Green's motion to suppress Hallock's photographic identification and in-court identification. Police conducted a photo lineup with six pictures that included a recent picture of Green. An officer told Hallock, "We have six pictures we want you to look at. We have a suspect within these six pictures. You can take as long as you want ... and if you can't identify him, fine." Hallock said she was "pretty sure" Green was her assailant. After identifying Green, the police told her she had identified the right person.
Green argues that Hallock's identification through the photo lineup was unnecessarily suggestive and must be suppressed. He also argues that Hallock's subsequent in-court identification must be suppressed. We disagree. This Court has adopted a two-part test to determine whether an out-of-court identification may be admitted: First, whether police used an unnecessarily suggestive procedure to obtain an out-of-court identification, and, second, if so, considering all the circumstances, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. Grant v. State, 390 So.2d 341, 343 (Fla. 1980), cert. denied, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981).
We find that the police did not use an unnecessarily suggestive procedure to obtain Hallock's out-of-court identification of Green, so we need not consider the second part of the Grant test. The police showed Hallock an array of six photographs, all of which depicted men with similar characteristics. Although police indicated the suspect was in the photo lineup and Green's photograph was darker than the others, there is no indication that officers directed Hallock's attention to any particular photograph. See Johnson v. State, 438 So.2d 774, 777 (Fla. 1983) (photo *395 lineup not impermissibly suggestive even though only the defendant had a suntan and his inmate uniform was a lighter blue than those of other inmates in the lineup), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984). Thus, the trial court did not err in refusing to suppress the photo identification. In addition, Hallock's in-court identification was based on her observation of Green at the crime scene.
Next, we find that the trial court did not err in giving the jury a flight instruction.[2] Subsequent to trial in this case, this Court held that the flight instruction should not be given. Fenelon v. State, 594 So.2d 292, 295 (Fla. 1992). But Fenelon is prospective and does not apply to the instant case. Id.; see also Taylor v. State, 630 So.2d 1038, 1042 (Fla. 1993) ("This Court intended that the holding in Fenelon be applied prospectively only."), cert. denied, ___ U.S. ___, 115 S.Ct. 107, ___ L.Ed.2d ___ (1994).
Before Fenelon a trial court could give the flight instruction "in the limited circumstance where there is significantly more evidence against the defendant than flight standing alone." Whitfield v. State, 452 So.2d 548, 549 (Fla. 1984). We note that although Green objected to the trial judge giving the flight instruction, he did not object to the actual evidence that Green fled to avoid prosecution. A friend of Green's testified that Green told him shortly after the murder, "I'm going to disappear." Green told another friend, "I f____ed up, man. I f____ed up." Green's sister testified that she saw Green the day after the shooting, but then, "I didn't see him anymore." Several police officers testified that they looked for Green in the months after the murder, but did not arrest him until June 1989. A jury could reasonably draw the inference that Green fled to avoid arrest and prosecution. Thus, we find no error in giving the flight instruction.
We next consider whether the trial court erred in considering separate aggravating circumstances that Green committed the murder (1) for pecuniary gain and (2) during the commission of a felony (kidnapping). Green argues that the trial court improperly doubled these aggravating factors because the indictment alleges that the underlying intent for the kidnapping was to commit a robbery. The indictment, however, also has the option that the kidnapping was done with the intent to terrorize. Green argues that because there was no jury finding on which theory existed the finding of both aggravating factors must be disapproved.
Improper doubling occurs when aggravating factors refer to the same aspect of the crime. Provence v. State, 337 So.2d 783, 786 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). If the sole purpose of the kidnapping had been to rob Flynn and Hallock, we would resolve this issue differently. The evidence, however, supports a finding of both aggravating circumstances. The purpose of the kidnapping clearly was not to rob Hallock and Flynn because they were robbed before they were kidnapped. Thus, the kidnapping had a broader purpose than to provide the opportunity for a robbery. See Brown v. State, 473 So.2d 1260, 1267 (Fla.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985). Compare Cherry v. State, 544 So.2d 184, 187 (Fla. 1989) (trial court improperly considered murder for pecuniary gain and murder during the commission of a burglary as separate aggravating factors where the sole purpose of the burglary was pecuniary gain), cert. denied, 494 U.S. 1090, 110 S.Ct. 1835, 108 L.Ed.2d 963 (1990). This issue is meritless.
Green also argues that the facts do not support the trial court's finding that the crime was heinous, atrocious, or cruel. See § 921.141(5)(h), Fla. Stat. (1987). We agree. *396 This aggravating factor is reserved for "the conscienceless or pitiless crime which is unnecessarily torturous to the victim." State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). The additional acts accompanying Flynn's death  Flynn knew Green had a gun, his hands were tied behind his back, and he was driven a short distance to the orange grove  do not turn this shooting death into the "`especially' heinous" type of crime for which this aggravator is reserved. See Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). Although this aggravating factor does not apply in the instant case, the three other aggravating factors support the death penalty and there is a weak case for mitigation. Thus, any error is harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986). Because this is so, there was no harm in instructing the jury on this factor.[3]
Green next argues that the trial court improperly refused to find mitigating factors that the evidence established. In Campbell v. State, this Court held that a trial judge must give some weight to mitigating circumstances shown by a preponderance of the evidence. 571 So.2d 415, 420 (Fla. 1990). Campbell was decided before sentencing in Green's case. The sentencing order in the instant case indicates that the judge considered and weighed statutory and nonstatutory mitigating factors. He determined that these factors failed to rise to the level of mitigation. The focus of Campbell is that a trial judge must give weight to mitigating factors. This concern is met by the trial judge's weighing. Although the sentencing order might not comply strictly with the requirements of Campbell, the trial judge clearly gave careful consideration to the mitigating factors.[4]
Finally, in light of other cases, the three remaining valid aggravating circumstances, and no mitigators, we find that Green's death sentence is proportionate.
Accordingly, we affirm the sentences and convictions.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] Whether (1) the trial court erred in admitting evidence of dog scent tracking; (2) the trial court erred in denying Green's motion to suppress Kim Hallock's photographic and in-court identifications; (3) the trial court erred in denying Green's motion for the jury to view the murder scene; (4) the trial court erred in instructing the jury on flight; (5) the trial court erred in considering as separate aggravating circumstances that Green committed the murder for pecuniary gain and Green committed the murder during a kidnapping; (6) the trial court erred in finding that the murder was heinous, atrocious, and cruel; (7) the trial court improperly refused to find mitigating circumstances; (8) the death penalty is disproportionate; and (9) the heinous, atrocious, or cruel aggravator is unconstitutionally vague.

We find no merit to the third issue because the trial judge was well within his discretion to deny Green's motion for the jury to view the murder scene. Bundy v. State, 471 So.2d 9, 20 (Fla. 1985), cert. denied, 479 U.S. 894, 107 S.Ct. 295, 93 L.Ed.2d 269 (1986).
[2] The trial judge gave this flight instruction:

When an accused in any manner attempts to escape or evade a threatened prosecution by flight or concealment, that fact may be considered by you in arriving at a determination of the guilt or innocence of the accused. Flight is considered to exist when an accused departs from the vicinity of the crime under circumstances such as to indicate a sense of guilt or to avoid arrest. If you find that the defendant attempted to escape or evade a threatened prosecution through flight or concealment, or similar indications of a desire to evade prosecution, you may consider this fact along with all the other testimony and the evidence in deciding guilt or innocence of the defendant.
[3] We also reject Green's challenge to the heinous, atrocious, or cruel aggravator as unconstitutionally vague because this issue was not preserved for appeal. Green did not object at trial to the form of the instruction, which is necessary to preserve a claim under Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). See, e.g., Mills v. Singletary, 622 So.2d 943, 944 (Fla. 1993). Even if the issue had been preserved, the instruction given in this case was not the instruction disapproved in Espinosa.
[4] After discussing all aggravating and mitigating factors, the sentencing order includes this summary:

After weighing the evidence the court finds four aggravating circumstances to exist. The court further finds that no statutory mitigating circumstances exist nor any nonstatutory mitigating circumstances. Aggravating factors are found to substantially outweigh mitigating circumstances.