915 So.2d 239 (2005)
Stanley M. McCRAY, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D04-2854.
District Court of Appeal of Florida, Third District.
November 30, 2005.
*240 Bennett H. Brummer, Public Defender, and Valerie Jonas, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Robin F. Hazel, Assistant Attorney General, for appellee.
Before GREEN, FLETCHER, and ROTHENBERG, JJ.
ROTHENBERG, Judge.
The defendant, Stanley McCray, appeals his convictions of attempted burglary of a structure, possession of burglary tools, and criminal mischief, in which he was sentenced as an habitual felony offender. The defendant's sole claim on appeal regards the State's introduction of dog-tracking evidence, which he alleges was admitted without the State laying the requisite foundation establishing the reliability of the dog used to track the defendant. As we conclude that the State introduced sufficient evidence to establish the reliability of the dog-tracking evidence, we find that the trial court clearly did not abuse its discretion in allowing its admission, and affirm. Ray v. State, 755 So.2d 604, 610 (Fla.2000)(holding that the admissibility of evidence is within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion); see also Irving v. State, 627 So.2d 92 (Fla. 3d DCA 1993).
The evidence introduced by the State is as follows. Officer James Alexander was dispatched to an audible burglary alarm at a local business and arrived at the location of the alarm within two to three minutes in a marked police vehicle. The building was equipped with a flood light and the church parking lot across the street was well lit. From his position about thirty to forty feet away, Officer Alexander observed the defendant and another man kneeling at the door of the business attempting to pry it open with a metal object for one to two minutes, until they stood up facing him. Officer Alexander immediately turned on his vehicle's headlights and began walking towards them, at which point, the defendant and his companion fled. Officer Alexander chased the defendant, whom he described as an older black male five feet five inches tall to five feet seven inches tall wearing dark clothing, across the street into the parking lot of the church, where he lost sight of him.
Back-up arrived within minutes and set up a perimeter. Officer Robert Baker and his canine partner, Buddy, also arrived, and were directed by Officer Alexander to the location where he lost sight of the defendant, and was provided with a description. Within minutes, Buddy picked up a track and, as he was trained to do, dragged Officer Baker along with him as *241 he tracked the scent which led him to a large concrete enclosure which housed the church's air conditioning units. Upon arriving at the enclosure, Buddy stopped, began barking, and tried to scale the wall. The defendant was found hiding underneath one of the air conditioning units located within the concrete structure Buddy had alerted to. Officer Alexander positively identified the defendant as the man he chased from the business and this identification was not challenged at trial. The tracking took approximately five minutes and only ten to fifteen minutes had elapsed between the defendant's flight and Officer Alexander's positive identification of the defendant.
In Florida, evidence of the conduct of a dog tracking a suspect may be introduced, providing a proper foundation is laid. Green v. State, 641 So.2d 391 (Fla.1994), cert. denied, 513 U.S. 1159, 115 S.Ct. 1120, 130 L.Ed.2d 1083 (1995); Tomlinson v. State, 129 Fla. 658, 661, 176 So. 543 (1937). The foundational requirements necessarily deal with establishing the reliability of the dog. Reliability may be established by introducing evidence of the breed, training, and past performance of the dog. In Tomlinson, evidence that the dog was a "well-trained and reliable bloodhound" was found to be sufficient.[1] Likewise, evidence of the dog's training, coupled with the fact that he/she has successfully tracked humans, was found by the First District Court to be sufficient to lay a foundation for the introduction of dog-tracking evidence. See Toler v. State, 457 So.2d 1115 (Fla. 1st DCA 1984), review dismissed, 461 So.2d 116 (Fla.1984); Edwards v. State, 390 So.2d 1239, 1240 (Fla. 1st DCA 1980)(evidence that the tracking dog was a "purebred registered blood-hound" along with evidence regarding his training and that he had successfully tracked four or five escapees from jail, sufficiently established reliability).
Officer Baker, the dog's trainer and partner, testified that he has trained dogs to track for more than thirty-five years and that he has specifically trained and worked with this dog for the past four years, which he described as a "Belgian police work dog." He explained that Buddy's training includes weekly tracking practice and, in the past two years, he has done twenty tracks with Buddy, some of which have resulted in apprehensions. Officer Baker testified that when Buddy picks up a track, he becomes excited and then will drag Officer Baker in the direction of the track and alert him when the object of the track is located. That is exactly what occurred in this case. Within minutes of being taken to where the defendant was last seen, Buddy picked up his scent, grew excited, dragged Officer Baker with him as he tracked the scent which led him to the concrete enclosure where he stopped and began barking and trying to scale the wall when he located the object of the track.
In Green v. State, the Florida Supreme Court, in affirming the conviction obtained in reliance upon dog-tracking evidence, relied upon not only the character and dependability of the dog, but also considered "other indicia of reliability." Some of the factors the court relied upon were: that the tracking occurred within hours of the crime, that the area was secured shortly after the crime was committed, and that the track was continuous. Id. at 394. In the instant case, a perimeter was set up within minutes of the crime, covering a *242 two-block radius surrounding the church and parking lot where the defendant fled to. The tracking was initiated within five minutes (not hours as in Green) of the crime and the flight of the defendant. The track began in the very location of the church parking lot where the defendant was last seen during his flight and attempt to elude law enforcement. The dog picked up the track immediately, the track was continuous, the dog located the defendant hiding in a concrete structure within five minutes of his disappearance, and this concrete structure was located near where the officer lost sight of him (the structure was located along the south side of the church). Additionally, the search took place late at night (approximately 12:30 a.m.), the defendant was found concealed under an air conditioning unit, he fit Officer Alexander's description of the perpetrator, and he was positively identified by Officer Alexander, an identification not disputed at trial.[2] Thus, as in Green, we find that there was ample evidence introduced to establish the reliability of the dog-track and to support its admissibility at trial.
While we conclude that the trial court did not abuse its discretion in admitting the dog-tracking evidence, we additionally find that even if the evidence had been improperly admitted, the error would be harmless beyond a reasonable doubt based upon the fact that a perimeter had been set up within minutes of the defendant's flight, securing a two-block radius around the church where he disappeared, he was located approximately five minutes later, he was hiding near the church where he was last seen, he fit Officer Alexander's physical, age, and clothing description, and Officer Alexander, who observed him for a minute to two minutes, positively identified him.
Affirmed.
NOTES
[1] The "olfactory sense of the American bloodhound is legendary." Winston v. State, 78 S.W.3d 522, 528 (Tex.App.2002).
[2] While the defendant has challenged the strength of Officer Alexander's identification in its initial brief, as no challenge to the officer's identification was raised below, we find that this challenge was not preserved for appellate review. See F.B. v. State, 852 So.2d 226, 229 (Fla.2003)(in order to raise a claim of error on appeal, the alleged error must be objected to at trial when it occurs; the argument raised on appeal must be the "specific contention asserted as legal ground for the objection ... or motion below").