# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2425

_____

BILLY GEAR,

    Appellant,

v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Taylor County.
Gregory S. Parker, Judge.

December 10, 2018

LEWIS, J.

Appellant, Billy Gear, appeals his convictions and sentences for first-degree murder and kidnapping. He contends that the trial court erred in admitting the dog tracking evidence and in denying his motion for judgment of acquittal on the kidnapping charge. We affirm as to the denial of the motion for judgment of acquittal without discussion, and affirm as to the admission of the dog tracking evidence for the reasons that follow.

## BACKGROUND

Appellant and the victim, Melissa Darnell, had custody disputes over their infant son. On December 29, 2015, Sergeant Bryan Hayden of the Taylor County Sheriff's Office served Appellant with a court order to take custody of the infant—with

whom Appellant had disappeared during a visit at Melissa's home—and returned the child to Melissa. Hayden informed Appellant, who was upset, that he could contest custody at the court hearing that was scheduled for the following week. After law enforcement reunited Melissa with the child, Appellant told his acquaintances that if he was not granted visitation at the upcoming custody hearing, he was going to kill Melissa.

On January 6, 2016, at the custody hearing, the court granted Melissa custody. According to witness testimony and security footage, she and Appellant left the Taylor County Courthouse together around 2:30 p.m. Jimmy Jordan and his wife saw a man brutally pushing and shoving a woman by the shoulders towards the woods behind the Wal-Mart in Perry and called 911 around 2:49 p.m. Law enforcement officers responded to the 911 dispatch and waited outside the woods. Sergeant Jay Ricketson of the Perry Police Department saw Appellant exiting the woods behind Wal-Mart in a hurried fashion. Appellant appeared nervous and sweaty, was breathing heavily, and had blood on him. During his initial encounter with police, Appellant claimed he had been running and playing in the woods with his male cousin, that the person he was seen pushing into the woods was the cousin, who had long hair, and that Melissa had gone home following the custody hearing. Shortly thereafter, the police found blood and drag marks in the woods and then discovered Melissa's remains covered with debris and surrounded by court documents. Appellant's cousin denied seeing Appellant during the day in question. As the police uncovered further evidence refuting Appellant's version of events, his account continued to change. He eventually admitted to the police that he covered up Melissa's body, but claimed her death was an accident—a contention that was later repudiated by the medical examiner's findings, as well as by Appellant's confession to a jail mate. The medical examiner observed injuries on Melissa consistent with having been dragged and determined that her cause of death was non-accidental crushing neck trauma with another significant attributing condition of a fractured jaw. While in the Taylor County Jail, Appellant told his cellmate that due to custody issues, he assaulted Melissa in the Wal-Mart parking lot, took her to a path in the woods, and beat her to death by crushing her neck and dislocating

2

her jaw. Appellant also told the police that he had been in those woods months prior.

On January 8, 2016, the police contacted Kelly Walker with the First Response Search Team about helping them find missing clothing. Walker testified that she is retired from the sheriff's office, where she worked for thirty-two years; she described her experience as a K-9 handler, in which capacity she has been working since 1992; and she explained that the First Response Search Team, of which she is the president, is a nonprofit organization that assists law enforcement and trains its dogs to work much older trails than the patrol units. Walker conducted a track of the scene with her K-9 about forty-four to forty-eight hours after Jordan's 911 call.

Walker testified that she performed the track with her trailing dog Bella, who is a bloodhound and scent specific, meaning she follows the scent she is presented with. Walker described Bella's training, which began at the age of four months and continued through her retirement at the age of ten years, and believed the track in this case was her last one. Bella's retirement had to do only with her age and the availability of a replacement canine and not with any decrease in her ability to track. Bella did a couple of hundred trails and proved reliable at scent trailing— she was successful "most all of the time." At the time of the track at issue, Bella held a National Association of Search and Rescue certificate and was proficient in tracking scents that were thirty-six to forty-eight hours old. Although Bella had the capacity to track thirty-day-old scents, she was only trained to track scents up to fifty-eight hours old. Bella had in the past successfully done tracks where she recreated someone's steps and had also successfully tracked an over three-day-old missing person's trail for well over a mile and led Walker to a trailer home where it was confirmed the person had been.

In this case, Bella was presented with Appellant's cap in a vacant lot by the Wal-Mart entrance and she began tracking from where Jordan saw the man pushing the woman into the woods, to the area where Melissa's remains were found, and then to the area where Appellant was apprehended by police upon exiting the woods. Walker had not been told about the geography and

3

significant locations related to the case. Bella never lost Appellant's scent, which she continuously tracked, allowing Walker's team to locate several items of evidence.

The evidence of Bella's tracking was admitted over the defense's objection. Appellant argued that the State was using the evidence improperly to recreate a track and that the evidence was unreliable, but the trial court found it met the indicia of reliability. Following the jury's verdict finding Appellant guilty as charged, the trial court adjudicated him guilty on both counts and sentenced him to consecutive terms of life imprisonment. This appeal followed.

## ANALYSIS

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Wilcox v. State*, 143 So. 3d 359, 373 (Fla. 2014). Dog tracking evidence is admissible if a proper foundation is laid. *McCray v. State*, 915 So. 2d 239, 241 (Fla. 3d DCA 2005) (citing in part *Green v. State*, 641 So. 2d 391 (Fla. 1994)). The foundation requirement pertains to establishing the reliability of the dog, which may be accomplished by introducing evidence of the dog's breed, training, past performance, and other indicia of reliability. *Id.*; *see also Toler v. State*, 457 So. 2d 1115, 1117 (Fla. 1st DCA 1984) (explaining same).

In *Toler*, we held that the trial court did not err by admitting the dog tracking evidence because "Lieutenant Miller's testimony that Bloodhound Andy had successfully tracked humans on seven prior occasions and his testimony that Andy had been extensively trained to track humans provided a sufficient foundation." 457 So. 2d at 1117. In that case, the appellant was tried and convicted for burglary of a dwelling and the dog, with whom Lieutenant Miller had worked on seventeen occasions, traced "a scent" from the ditch where the stolen property was found to the area near the victim's trailer where footprints with a unique grid-like design and tire tracks from a vehicle with at least three different kinds of tires that could have been left by the appellant's boots and truck were found. *Id.* at 1116-17.

Similarly, in *Green v. State*, the supreme court rejected the appellant's argument that the trial court should have excluded

4

evidence of a dog's scent tracking because "the character and dependability of the dog were established, the officer who handled the dog was trained, and the evidence was relevant"; "[i]n addition, there were indicia of reliability: the tracking occurred within hours of the crime and the area had been secured shortly after the crime occurred, . . . and there was a continuous track to the home of Green's sister." 641 So. 2d 391, 393-94 (Fla. 1994) (noting that the trial court found that "although the scent tracking was the only evidence that established Green's identity, corroboration included . . . Green's presence at his sister's house earlier that day").

More recently, in *McCray*, the Third District concluded that the trial court did not abuse its discretion by admitting the dog tracking evidence because there was ample evidence to establish its reliability where the dog's handler testified that he has trained dogs to track for more than thirty-five years and worked with this particular dog for four years; the handler explained that the dog's training included weekly tracking practice and that in the past two years they did twenty tracks, some of which resulted in apprehensions; and, in the case, the crime scene area was secured within minutes, the tracking started within five minutes of the crime and the defendant's flight, the tracking began where the defendant was last seen, the dog picked up the track immediately, the track was continuous, and the dog located the defendant in his hiding place near the crime scene. 915 So. 2d at 240-42.

Turning to the case before us, Appellant maintains that the trial court erred by admitting the dog tracking evidence because it was unreliable. We disagree. The dog's reliability was established for a proper foundation through Walker's testimony that Bella is a bloodhound, she started training at the age of four months and continued training until her retirement at the age of ten years, she had done hundreds of tracks and proved reliable, she was successful at trailing "most all of the time," the track at issue was within her proficiency, and she was trained to track scents up to fifty-eight hours old. Moreover, additional indicia of reliability were present in this case given that the crime scene was secured, Bella's handler was not told of the geography or significant locations, and Bella tracked Appellant's scent continuously, without hesitation.

Appellant emphasizes that the tracking took place in an area where he had previously been in suggesting that the dog picked up an old scent. However, the only evidence about when Appellant had last been in the woods was a detective's testimony that Appellant stated during a police interview that he had been in the woods months prior to the crime. Walker testified that although Bella was capable of tracking thirty-day-old scents, she was trained to track scents only up to fifty-eight hours old. In addition to Bella having neither the training nor the capability to track a scent that is months old, the testimony was that Bella's track was continuous and connected the significant areas of the crime scene, indicating that she was following Appellant's scent from the time of the crime.

Appellant further argues that the dog tracking evidence in this case was used in an improper and unprecedented manner because the dog essentially recreated his alleged path instead of tracking with the goal of finding a suspect, corpse, or specific item at the end of the trail. However, that is a distinction without a difference. In either scenario, the dog is tracking the scent a person had left behind and is, thus, recreating/following that person's path, and even when tracking to find a suspect or missing person, there is no guarantee that the person will be at the end of the trail. While finding the target at the end of the trail provides additional indicia of reliability, equivalent indicia of reliability is present here because upon being presented with Appellant's scent, Bella started tracking from the place where Jordan saw a man forcefully pushing a woman into the woods, to the victim's body in the woods (where Appellant eventually admitted to having been at the time of the crime), and then to the back of the Wal-Mart where Appellant was apprehended by the police. Bella's tracking was continuous and she even located missing pieces of evidence along the way. We further note that Walker testified that Bella had successfully tracked people's paths in the past where the person was not found at the end of the trail and gave an example of a three-day-old missing person's trail.

Moreover, the dog tracking evidence admitted in this case is not unique. In fact, we are bound by *Toler*, where we upheld the admissibility of dog tracking evidence even though a person was not located at the end of the trail; indeed, even less indicia of

6

reliability was present there because the dog was not presented with the appellant's scent, but was used to track "a scent." Likewise, in *Green*, the supreme court upheld the admissibly of dog tracking evidence where the dog tracked to a place where the appellant was known to have been earlier in the day, not where he was actually found at the end of the trail.

Accordingly, we conclude that the trial court did not abuse its discretion in admitting the dog tracking evidence and affirm Appellant's convictions and sentences.

AFFIRMED.

RAY and M.K. THOMAS, JJ., concur.

—————————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

—————————————————

Andy Thomas, Public Defender, and Megan Long, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General; Benjamin L. Hoffman and Samuel B. Steinberg, Assistant Attorneys General, Tallahassee, for Appellee.