566 So.2d 888 (1990)
Shervin JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 88-3391.
District Court of Appeal of Florida, Fourth District.
September 12, 1990.
*889 Lucy Brown and Sara Blumberg of Dubiner & Blumberg, P.A., Boynton Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and John Tiedemann, Asst. Atty. Gen., West Palm Beach, for appellee.
WARNER, Judge.
This is an appeal from appellant's conviction for first degree murder. Because of errors committed in connection with an out of court photo identification, we reverse.
Nathaniel King was found dead on February 14, 1987, lying underneath an automobile with a gunshot wound in his lower right torso. Appellant was not at the scene, and there was no physical evidence such as fingerprints directly tying appellant to the crime. One witness saw the crime but could not identify the perpetrator, although he testified that the person who did the shooting was bearded. Appellant did not have a beard.
The only other eyewitness was Leonard Harmon. He had been smoking crack cocaine the entire night preceding the murder in his apartment directly across from the murder scene. He saw two people running around a car but did not observe a shooting. A Sergeant Carrion came to appellant's house the morning of the shooting to determine what Harmon had seen. He told Carrion at that time that he had not seen the assailant's face. Later on that day he was shown a photo lineup out of which he picked three persons as possible suspects. Appellant was not one of them. Two days later, when Carrion showed Harmon another photo lineup, he asked Harmon, "Can you pick out Shervin Johnson's picture?" He also told Harmon that appellant was in custody. Harmon complied and selected appellant's photo. Later on in a deposition Harmon testified that he had lied in his previous statements to the police and that he did not recognize the assailant.
During pre-trial hearings in ruling on a motion by the state to declare Harmon a court witness, the trial court stated "The witness is excluded." Upon appellant's request to exclude Harmon's photo identification the court indicated that he already had excluded that, although no hearing had been held on the issue. However, at trial Harmon was called to testify, and at that time the court permitted all statements of Harmon to be admitted, including the photo identification, over the objection of appellant that he had not been granted a hearing on his motion to suppress the tainted lineup.
The trial court erred in refusing to hold a hearing on the suppression of the photo lineup as is required by Rule 3.190(h), Florida Rules of Criminal Procedure, and failure to do so was reversible error. Carter v. State, 428 So.2d 751 (Fla. 2d DCA 1983); Brown v. State, 352 So.2d 60 (Fla. 4th DCA 1977). In this case both factors set forth in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) are present which would render the pretrial photo lineup inadmissible: (1) that the procedures utilized were impermissibly suggestive, and (2) that as a result there exists a substantial likelihood of misidentification. If, after the necessary hearing, the trial court believed the facts set forth by appellant, the motion should have been granted.
As to the first criteria, Harmon was not asked to pick out the photo of the person he saw running around the car. *890 Instead, he was asked by Sergeant Carrion specifically to pick out appellant's photo after Carrion had told Harmon that appellant was in custody. Clearly, this is an unduly suggestive procedure. As to the second criteria, Harmon had only seen the assailant for two to three seconds. Furthermore, even though Harmon knew appellant, he did not identify him as being the assailant during Harmon's first contacts with the authorities. On the date of the shooting Harmon said he told Carrion he didn't see the assailant in order to get rid of the police at his house, in which he admitted he was selling and smoking crack cocaine. Then two days later when he identified appellant as the assailant, he said he was also trying to get rid of the police at his house. In other words, Harmon willingly agreed to the police's suggestion that appellant was the person he saw at the shooting in order to get the police out of his crack house. Thus, the suggestive procedures may have resulted in a substantial likelihood of misidentification.
These, of course are factual issues solely for the court to resolve. The jury plays no role in resolving those issues. See Carter at 753; Brown at 61. Although at the pretrial hearing the court initially granted the suppression of the photo lineup without hearing evidence on the issue, he "ungranted" the motion at trial and allowed the state to use the photo identification without holding a hearing but with the comment that because of the witness' shifting testimony it was best to let both sides fully examine Harmon on his changing positions. Thus, the court in essence left it for the jury to resolve the credibility of the witness' statements, including the photo lineup. This is similar to the error committed in Brown where the trial court declined to rule on the evidence and credibility of the witnesses on the motion to suppress and instead submitted the entire matter to the jury.
The state argues that, in any event, when it was clear that the defense sought to attack Harmon's in-court testimony with his prior inconsistent statements, the State was entitled to "anticipatorily rehabilitate" Harmon using the prior consistent photo identification, citing Bell v. State, 491 So.2d 537 (Fla. 1986). Bell is of no help to the state in this case. What Bell permitted was a departure from the order in which admissible evidence may be presented according to the evidence code. Bell does not sanction the use for anticipatory rehabilitation of evidence which is inadmissible because of constitutional violations of due process.
We have examined the record based upon the standard set forth in State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), and cannot conclude that beyond a reasonable doubt that the error did not affect the jury verdict. A similar error was reversible in Brown, and it is reversible in this case.
Reversed and remanded for a new trial with directions to hold a hearing on defendant's motion to suppress prior to the admission of the evidence sought to be suppressed.
GLICKSTEIN, J., and JACK MUSSELMAN, Associate Judge, concur.