MAY, J.
 

 The defendant appeals his conviction and life sentence for armed robbery. The single issue raised concerns the trial court’s denial of the defendant’s motion to suppress. We find no error and affirm.
 

 
 *660
 
 The crime occurred at a CVS Pharmacy. When the defendant handed the merchandise to the store clerk at the check-out counter, he included a note that instructed the clerk to put all of the money from the register in a bag. At the same time, the defendant opened his shirt and showed the clerk a gun on his waistband. The clerk complied. The defendant placed the note in his pocket, took the money and merchandise, and ran out of the store.
 

 The clerk called 911 and told the operator that the robber was a white male, about 5'6", 5'7", not too tall, sort of tannish, and wearing a gray shirt, jeans, and a New York Yankees hat. The clerk described the man’s hair as dark brown, but not long.
 

 The lead detective developed the defendant as a suspect and compiled a photo line-up. Approximately a week after the incident, the detective took the photo lineup to the clerk. Prior to showing her the photos, he read from his card of admonitions. He told the clerk to take her time, look at all the photos, sometimes hairstyles and beards change, and asked her to be certain. He may have told her that someone was in custody.
 

 The defendant’s driver’s license picture was in this first line-up, and all of the men looked similar. After looking at all six pictures, the clerk chose the defendant’s picture because she “felt strongly that this was the man” who robbed her, but hesitated because “the man in that photo looks heavier than the man that robbed CVS.”
 

 The detective then compiled a second photo line-up. In the second photo lineup, the detective used the defendant’s Department of Corrections’ photo in which he appeared thinner. The photo was placed in a different position than in the first photo line-up. Thirty to forty minutes later, the detective returned to the clerk with the second photo line-up. The detective told the clerk that he had a more recent photo of the suspect. The clerk pointed to the defendant’s picture instantly, and said “that’s him.” She circled and initialed the photo with the date and time.
 

 The State charged the defendant with robbery by a firearm. The defendant moved to suppress the lineup identification as unduly suggestive. At the hearing on the motion to suppress, the clerk testified to the above facts and identified the defendant in the courtroom as the person who robbed her. She testified that she did not remember if the same six men were in both lineups, but the defendant’s pictures were in both.
 

 Defense counsel argued for suppression of both the in-court and out-of-court identifications. Defense counsel argued the lineups were unduly suggestive because the defendant was the only person who appeared in both lineups and because the detective may have said that a suspect was in custody and that he had more photos of the same person. Defense counsel further argued that the in-court identification was tainted by the unduly suggestive line-up identification. The trial court denied the motion.
 

 The court found no problem with the clerk’s hesitancy regarding the first lineup because the defendant looked heavier. While the court thought that the newer lineup may have been suggestive, the clerk’s opportunity to view the subject, and her accurate description of him caused the court to find that there was no substantial likelihood of misidentification. The court found defense counsel’s arguments more appropriate for a jury argument with regard to the weight of the evidence.
 

 At trial, the clerk identified the defendant as the armed robber and testified about the identification process. She had the opportunity to look directly at the
 
 *661
 
 defendant’s face. She was able to look through the window into the courtroom, where three to four men were sitting. The clerk saw the defendant sitting in a wheelchair alone, not talking to anyone and she “identified him right off’ and without hesitation. The State was able to show a video of the robbery where the defendant could be seen, but his face was not visible. The jury convicted the defendant of robbery with a firearm and found that he actually possessed a firearm during the robbery. The court adjudicated him guilty and sentenced him as a prison releasee reoffender to a term of life.
 

 On appeal, the defendant again argues that under the two-part test in
 
 Johnson v. State,
 
 566 So.2d 888 (Fla. 4th DCA 1990), the lineup procedure was unduly and unnecessarily suggestive because the defendant’s picture was the only picture that appeared in both lineups, and because the detective may have told the clerk that a suspect was in custody before showing her the original photo lineup. In addition, he argues, the totality of the circumstances suggested a likelihood of irreparable mis-identification where neither side presented evidence of the clerk’s description of, or opportunity to view, the subject. We disagree.
 

 “[A] trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness, and the reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.”
 
 Pagan v. State,
 
 830 So.2d 792, 806 (Fla.2002). We “must independently review mixed questions of law and fact that ultimately determine constitutional issues arising in the context of the Fourth and Fifth Amendment and, by extension, article I, section 9 of the Florida Constitution,”
 
 Connor v. State,
 
 803 So.2d 598, 608 (Fla.2001), and must “review legal conclusions de novo.”
 
 Backus v. State,
 
 864 So.2d 1158, 1159 (Fla. 4th DCA 2003).
 

 Florida law provides a two-part test for the suppression of an out-of-court identification: “(1) whether the police used an unnecessarily suggestive procedure to obtain the out-of-court identification; and (2) if so, considering all the circumstances, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification.”
 
 Fitzpatrick v. State,
 
 900 So.2d 495, 517-18 (Fla.2005) (quoting
 
 Rimmer v. State,
 
 825 So.2d 304, 316 (Fla.2002)).
 

 Here, the trial court applied that two-part test. The clerk identified the defendant in both lineups although she was less certain about the identification in the first photo lineup due to his weight. The clerk immediately identified the defendant when shown the second photo lineup. The trial court specifically found nothing wrong with the clerk’s hesitancy in the first photo lineup. The court found the pictures to be similar in each lineup with no picture standing out more than another.
 

 While the court questioned the suggestiveness of the second photo lineup because the defendant’s photo was the only one common to both, this court has previously held that the use of the same photo does not necessarily render the lineup suggestive.
 
 See Fearon v. State,
 
 10 So.3d 146, 148-49 (Fla. 4th DCA 2009). And, even though the detective may have informed the clerk that a suspect was in the photo lineup, this alone was insufficient to classify the procedure as suggestive.
 
 See Green v. State,
 
 641 So.2d 391, 394 (Fla.1994). Add to that the court’s finding, with which we concur, that the clerk’s opportunity to observe the defendant and her accurate description of him within minutes of the robbery insured against any likelihood of misidentification.
 

 
 *662
 
 For these reasons, we affirm.
 

 Affirmed,
 

 POLEN and GERBER, JJ., concur.